IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA

JANIS TRULSSON,

                    Plaintiff,                              No. 2:11-cv-02986-KJM-DAD

          vs.

COUNTY OF SAN JOAQUIN, THE
DISTRICT ATTORNEY'S OFFICE,
and DOES 1 through 10, inclusive,

                    Defendants.                             ORDER

_____/

          This case was on the court's June 7, 2013 calendar for defendants' motion for

summary judgment.  Jill Telfer appeared for plaintiff and Velma Lim and Jamie M. Ryker

appeared for defendants.  For the reasons explained below, defendants' motion is DENIED.

I.        BACKGROUND[1]

          A.  Plaintiff's Employment at the District Attorney's Office

          Plaintiff Janis Trullson began working at the San Joaquin County District

Attorney's Office in 1981 as a Deputy Sheriff and was later promoted to Detective in the Child

_____

          [1] To the extent the facts are undisputed, the court cites to the parties' statements of
undisputed facts.  Otherwise, the court cites directly to admissible evidence provided by the
parties.

1

1    Abuse/Sexual Assault crimes unit.  (Pl.'s Resp. to Defs.' Statement of Undisputed Facts. ¶ 2,

2    ECF 22-2.)  Plaintiff was promoted to the position of Investigator II in 1995, then to the

3    Lieutenant Investigator position in 1996.  (Dep. of Janis Trullson (Trullson Dep.) at 41:3-12,

4    ECF 19-26; Dep. of James P. Willett (Willett Dep.) at 150:15-18, ECF 12-29.)  James P.

5    Willett, who was the Assistant District Attorney at the time, asserts he recommended plaintiff

6    for promotion to Lieutenant Investigator.  (Willett Dep. at 149:4-150:17.)   Plaintiff disputes

7    that Willett was part of the panel that selected her for promotion.  (Decl. of Janis Trullson

8    (Trullson Decl.) ¶ 9, ECF 22-8.)  At the same time as plaintiff, Larry Ferrari was promoted to

9    the Lieutenant Investigator position, also based on Willett's recommendation.  (Willett Dep. at

10   151:9-21, ECF 19-28.)

11          In 2005, District Attorney John Phillips retired and Willett was appointed as his

12   replacement.  (Willett Dep. at 26:1-19.)  Also in 2005, Chief of Investigation Elbert Holman

13   retired and Assistant Chief of Investigation Gary Preeo took Holman's place.  (Trullson Decl. ¶

14   23.)  Like Preeo, Holman had held the Assistant Chief position before he became Chief.

15          In 2006, Willett selected Ferrari to become the new Assistant Chief of

16   Investigation.  (Willett Dep. at 160:14-161:15.)  Willett explained that he "thought [Ferrari]

17   was a better choice [than plaintiff] and had a little more experience in terms of years of service

18   in law enforcement, in general" and "believed he was a better fit for the position at the time."

19   (Willett Dep. at 161:22-24; 162:13-15.)  Plaintiff was "surprised and disappointed" that she

20   was not promoted, because she felt she was more qualified than Ferrari.  (Trullson Decl. ¶ 14.)

21          In late 2006, Preeo resigned suddenly and Willett selected Ferrari to be the new

22   Chief of Investigation.  (Trullson Dep. at 103:18-104:12.)  At the same time, Willett appointed

23   Trullson to become the new Assistant Chief of Investigation.  (*Id.* at 110:6-23.)

24          Beginning in 2009, the County Board of Supervisors directed the District

25   Attorney's Office to reduce its budget by 12.5 percent in Fiscal Year 2009-2010, by 26 percent

26   in Fiscal Year 2010-2011, and by 10 percent in Fiscal Year 2011-2012.  (Pl.'s Resp. to Defs.'

27   Statement of Undisputed Facts ¶ 10.)  The reduction in budget required the District Attorney's

28   Office to eliminate 71 personnel positions.  (*Id.* ¶¶ 11-12.)  Willett was advised to eliminate

plaintiff's Assistant Chief of Investigation position once the District Attorney's Office was cutting positions, but initially declined to do so.  (*Id.* ¶ 15.)  Willett initially believed that if plaintiff's position was eliminated, she would be "bump[ed] down" to an Investigator position.  (Willett Dep. at 199:6-21.)  Ultimately, plaintiff learned on March 7, 2011 from Ferrari that her position was being terminated.  (Pl.'s Resp. to Defs.' Statement of Undisputed Facts ¶ 18.)  Plaintiff asked Willett to consider giving her service credits for thirty-one years of work to improve her retirement benefits, but he did not.  (*Id.* ¶ 19.)

Although the parties dispute the specific timeline, Ferrari began considering retirement sometime in 2011.  Ferrari testified in his deposition that he told Willett he would likely not retire in 2011, but that he would most likely retire soon after January 1, 2012.  (Dep. of Larry Ferrari (Ferrari Dep.) at 156:14-24.)  Ferrari also ordered his retirement badge, an identification badge worn by retired peace officers, in May or June of 2011.  (*Id.* at 150:11-151:14.)  Ferrari testified he did not want to retire in 2011, even though his retirement benefits had fully vested sometime in 2011, because he was concerned about the sustainability of the County's retirement system, both his wife and Willett wanted him to continue working, and he was not sure he was ready to leave his position.  (*Id.* at 157:7-160:20.)

Willett testified in his deposition that there was no funding to extend plaintiff's position to allow her to stay until Ferrari's retirement, although he obtained funding to extend a Chief Deputy District Attorney position for six months, until that employee's retirement, because he felt this position was more important than plaintiff's.  (Willett Dep. at 240:5-242:1.)  Plaintiff's layoff was effective on July 4, 2011.  (Trullson Dep. at 268:22-25.)

In June 2011, when plaintiff was still employed, District Attorney Investigator Kenneth Melgoza was sent to a California District Attorney Association Conference for a Chief Investigator training session, and was instructed to be discreet so as to not offend plaintiff.  (Pl.'s Resp. to Defs.' Statement of Undisputed Facts ¶ 30.)  On January 2, 2012, Ferrari retired.  (*Id.* ¶ 24.)  Willett appointed Melgoza to be Chief Investigator.  (*Id.* ¶ 30.)  At the time of his promotion, Melgoza was an Investigator II, but had been a Lieutenant Investigator before being demoted in July 2011 due to budget cuts.  (Melgoza Dep. at 48:7-24, ECF 19-39.)

3

On July 7, 2011, plaintiff filed an internal discrimination complaint.  (Ex. 138, ECF 22-13.)  Although county policy requires that a complainant be contacted within fifteen days of making the complaint, plaintiff was not interviewed until October 4, 2011.  The report was completed on December 27, 2011, although policy requires that the report be completed within sixty days of the complaint.  (Trullson Decl. ¶¶ 33-35.)

B.  Allegations of Past Discrimination[2]

Plaintiff asserts that several other women at the District Attorney's Office experienced gender discrimination.  Michelle Turner, a former Deputy District Attorney, filed a gender discrimination complaint in 1993 based on her belief that male employees were protected from layoffs over employees with greater seniority, because of their gender, but never received a response to her complaint.  (Decl. of Michelle Turner (Turner Decl.) ¶¶ 2-5, ECF 22-4.)

In 1994, Lisa Brown, another female Deputy District Attorney, filed a gender discrimination complaint asserting that she and Patricia Rieta-Garcia, both pregnant attorneys on maternity leave, were involuntarily transferred from the main office to the less desirable Family Support Division, purportedly because this division had more funding available than the main office.  Although they were advised that the transfer was temporary, then-District Attorney Phillips ignored Brown's requests to return to her former position and she was then fired.  (Decl. of Lisa Brown (Brown Decl.), ECF 22-5; Ex. 16, ECF 22-13.)   Rieta-Garcia also asserts that in 1999 she was denied an increase in pay Willett promised her after she transferred to a position previously held by a man, and that for months, she received no response to the grievance she filed.  (Decl. of Barbara Rieta-Garcia (Rieta-Garcia Decl.) ¶¶ 3-4, ECF 22-3.)

Barbara Kronlund, former supervisor of the Child Abuse Sexual Assault Unit, was unable to use her administrative leave time between 1993 and 1995 before it expired, whereas a male attorney was allowed during the same time period to defer his administrative

---

[2] Defendants object to the evidence cited in this section of this order as hearsay.  (*See* ECF 27-2.)  These objections are overruled.  Defendant also objects to this evidence under Federal Rule of Civil Procedure 403; these objections are discussed below.

leave to the following year.  (Decl. of Barbara Kronlund (Kronlund Decl.) ¶¶ 4-6, ECF 28-2.)  Willett encouraged Kronlund not to pursue a complaint about the issue.  (*Id.* ¶ 6.)

Jane Davis, former Deputy District Attorney and assistant supervisor in the Juvenile Division of the District Attorney's office, applied in 1997 to be promoted to supervisor but never received a response to her application, despite the recommendation of the outgoing supervisor.  (Decl. of Jane Davis (Davis Decl.) ¶¶ 2-6, ECF 22-7.)  A male Deputy District Attorney who had never worked in the Juvenile Position, Ed Busuttil, was promoted to supervisor.  (*Id.* ¶¶ 7-8.)  Davis filed a gender discrimination complaint but never received a response.  (*Id.* ¶¶ 10-13.)  In 2005, Busuttil was promoted and another man, Ken Puckett, was hired to replace him.  (*Id.* ¶ 14.)

Mary Aguirre, another Deputy District Attorney, worked as supervisor of the domestic violence unit until she returned from her maternity leave in 2001. (Dep. of Mary Aguirre (Aguirre Dep.) at 20:16-19, 21:9-16, ECF 19-40.)  Upon her return, Aguirre was told that she needed to "catch up on the law," was given tasks typically given to junior attorneys, and was moved from her private office to share a different office with two other attorneys.  (*Id.* at 24:9-21, 27:3-17.)  One month later, Aguirre was given the choice to move to narcotics or the insurance fraud unit.  (*Id.* at 27:18-28:2.)  Willett promoted her in April 2005.  (*Id.* at 32:18-25.)

Plaintiff also asserts that Delanie Pimentel, a former lieutenant, experienced gender discrimination.  Because the excerpts of Pimentel's deposition submitted by plaintiff are not properly authenticated by the court reporter, the court cannot consider this evidence.  *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 776 (9th Cir. 2002); *Pavone v. Citicorp Credit Servs., Inc.,* 60 F. Supp. 2d 1040, 1045 (S.D. Cal.1997).

C.  Plaintiff's Claims

Plaintiff asserts that her termination, as well as the denial of a promotion to the Chief Investigator position, was discriminatory and alleges the following three claims against all named defendants: (1) gender discrimination under Title VII, 42 U.S.C. §§ 2000e, *et seq.*, /////

5

and FEHA, Cal. Gov. Code § 12996; (2) retaliation under FEHA; (3) violation of California

Government Code §§ 12940, *et seq.*  Plaintiff pleads Doe defendants as well.[3]

II.     STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1); see also *Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts").  Moreover, "the requirement is that there be no genuine issue of material fact . . . .  Only disputes over facts that might affect the outcome of the

---

[3] The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). Plaintiff is warned, however, that such defendants will be dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Id.* (quoting *Gillespie*, 629 F.2d at 642). Plaintiff is further warned that Federal Rule of Civil Procedure 4(m), which states that the court must dismiss defendants who have not been served within 120 days after the filing of the complaint unless plaintiff shows good cause, is applicable to Doe defendants.  *See Glass v. Fields*, No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27, 2011).

6

1    suit under the governing law will properly preclude the entry of summary judgment."

2    *Anderson*, 477 U.S. at 247-48 (emphasis in original).

3            In deciding a motion for summary judgment, the court draws all inferences and

4    views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

5    587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).   "Where the record taken as a

6    whole could not lead a rational trier of fact to find for the non-moving party, there is no

7    'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v.

8    Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

9        III.    ANALYSIS

10           A.  Gender Discrimination Under Title VII and FEHA

11           Plaintiff alleges that defendants discriminated against her in violation of both

12   FEHA and Title VII.  The same legal framework applies to plaintiff's FEHA and Title VII

13   claims.  *Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007); *see also Wills v. Superior

14   Court*, 195 Cal. App. 4th 143, 159 (2011) (quoting *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317,

15   354 (2000)); *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108-09 (2007).

16   This framework is as follows:

17           First, the plaintiff has the burden of proving by the
             preponderance of the evidence a prima facie case of
18           discrimination. Second, if the plaintiff succeeds in proving the
             prima facie case, the burden shifts to defendant 'to articulate
19           some legitimate, nondiscriminatory reasons for the employee's
             rejection.' [] Third, should the defendant carry this burden, the
20           plaintiff must then have an opportunity to prove by a
             preponderance of the evidence that the legitimate reasons offered
21           by the defendant were not its true reasons, but were a pretext for
             discrimination.
22

23   *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell

24   Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973)) (internal quotation omitted).

25   Accordingly, the plaintiff "must carry the initial burden of establishing a prima facie case of . . .

26   discrimination", the burden of production then shifts to the employer "to articulate some

27   legitimate, nondiscriminatory reason" for its action in order to meet the prima facie case.

28   *McDonnell Douglas*, 411 U.S. at 802-04.  The burden then returns to the plaintiff to show the

                                                7

articulated reason is a pretext directly "'by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000)). The presumption of discrimination "drops out of the picture" once the employer meets its burden of production, but "the trier of fact may still consider the evidence establishing plaintiff's prima facie case" in evaluating whether the employer's explanation is pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

## 1. Prima Facie Case

There are two ways in which a plaintiff can make out a prima facie case of discrimination under Title VII, either through providing "direct evidence of discriminatory intent," or by meeting the factors set forth under *McDonnell Douglas*. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). Because plaintiff has not presented facts directly showing discrimination, the court considers whether she has raised a genuine issue of material fact in light of the *McDonnell Douglas* factors. As plaintiff alleges that her discharge was discriminatory, she must ultimately show:

> (1) that [she is a member] of a protected class; (2) that [she was] qualified for [her] position[] and performing [her] job[] satisfactorily; (3) that [she] experienced adverse employment actions; and (4) that "similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination."

*Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (citing *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2010)). "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang*, 225 F.3d at 1124 (alteration in original) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

Defendants argue plaintiff has not made out a prima facie case that she suffered discrimination as a matter of law; none of defendants' arguments identify the correct legal standard.  First, defendants contend that plaintiff "cannot" make a prima facie showing of discrimination because California law grants Willett, as District Attorney, the authority to choose his investigative staff.  (ECF 19 at 11-13 (citing CAL. GOV'T CODE § 26500).)  As plaintiffs assert, however, defendants provide no legal authority for the district attorney's discretionary authority exempting him from state or federal anti-discrimination statutes, or the district attorney's inability to meet his investigative duties while also complying with the statutes.  (ECF 22 at 6-7.)  *Cf. Burdine*, 450 U.S. at 259 ("[Title VII] was not intended to diminish traditional management prerogatives. It does not require the employer to restructure his employment practices to maximize the number of minorities and women hired.") (internal citations and quotations omitted).

Second, defendants assert that plaintiff's termination was based indisputably on a legitimate, nondiscriminatory reason, namely the reduction in county funding.  (ECF 19 at 13.)  But the *McDonnell Douglas* framework requires that the court put this consideration aside until after deciding whether plaintiff has made out a prima facie case.  *Cf. Hawn*, 615 F.3d at 1158 (explaining that the first and third stages of the *McDonnell Douglas* framework must remain distinct).

Finally, defendants state that plaintiff could only establish her discrimination claim by showing that San Joaquin County has a policy and custom of discrimination under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which she has not done here. However, *Monell* does not apply to claims under Title VII.[4]  In *Monell*, the Supreme Court held that the statutory language of 42 U.S.C. § 1983, which creates a cause of action for violations

---

[4] As discussed below, plaintiff is required to present a prima facie case of a discriminatory pattern or practice of discrimination because she has alleged that the County has a practice or pattern of discrimination against women.  Although this standard in the Title VII context is similar to the policy and custom requirement of *Monell*, *see Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997), these legal standards are still separate.

of constitutional rights, requires individuals bringing claims under Section 1983 against government actors to allege that the injury was a result of the government's policy or custom. 436 U.S. at 691-95.  In *Schiff v. City & County of San Francisco*, 816 F. Supp. 2d 798, 809 (N.D. Cal. 2011), the case that defendants reference in support of their *Monell* argument, the court granted plaintiff's Section 1983 claims against the city under *Monell* but did not address the merits of plaintiff's Title VII claims.  Here, plaintiff has brought claims under Title VII and FEHA, not a constitutional claim under Section 1983.  Accordingly, *Monell* is irrelevant.

The court finds that plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether she has minimally established a prima facie case of discrimination as required under *McDonnell Douglas*.  Defendant does not dispute that plaintiff is female and thus a member of a protected class, that she was qualified for her job, and that being laid off and not selected for a promotion were both adverse employment actions. Plaintiff has presented admissible evidence that similarly situated males were treated more favorably than she was.  Holman, Preeo, and Ferrari, the men who were Assistant Chief of Investigation before plaintiff, all were promoted to the Chief of Investigation position, whereas plaintiff was not.

Additionally, plaintiff has offered anecdotes and statistics regarding the experiences of other female employees at the District Attorney's Office, as required ultimately to support her claim that her termination and lack of promotion were the result of a pattern and practice of discrimination.  *See Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir. 2005) (plaintiff alleging pattern or practice of discrimination "had to establish, by a preponderance of the evidence, that racial discrimination was the [employer's] 'standard operating procedure — the regular rather than the unusual practice'") (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 (1977)).  Specifically, plaintiff has offered figures demonstrating the disparity between the number of males and females in management positions at the District Attorney's Office (Exs. 23, 24, ECF 22-13), and testimony from other women at the office who believe they were subjected to gender discrimination.

/////

Defendants argue that plaintiff's anecdotal evidence can demonstrate a prima facie case of discrimination only if the other women were similarly situated to plaintiff.  (ECF 19 at 18.)  Here, however, plaintiff's position is that there was a pattern and practice of discrimination against women throughout the District Attorney's office; she does not allege she was treated differently than other, similarly situated, female employees.  "A plaintiff may show an inference of discrimination in whatever manner is appropriate in the particular circumstances." *Hawn*, 615 F.3d at 1156 (citations and internal quotations omitted).  In *Obrey*, where the plaintiff alleged he was not promoted due to his employer's pattern of racial discrimination, the Ninth Circuit held that the district court improperly excluded anecdotal evidence of discrimination against other minority employees.  400 F.3d at 697.  Here, plaintiff's anecdotal evidence is relevant, on summary judgment, to her allegations that the District Attorney's office commonly discriminated against women.

Defendants also argue that plaintiff's anecdotal evidence cannot raise a genuine issue of fact regarding discrimination because it is inadmissible under Federal Rule of Evidence 403.  Rule 403 requires the court to exclude evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  (ECF 19 at 23 (citing *Tennison v. Circus Circus Enters.*, 244 F.3d 684, 686 (9th Cir. 2001)).)  Defendants assert that the incidents plaintiff references are too far in the past to be relevant to plaintiff's current claim of discrimination.  (ECF 19 at 18.)  In *Tennison*, in which an employee brought a sexual harassment claim against her employer, the Ninth Circuit held that the district court did not abuse its discretion by excluding testimony at trial of her co-workers about sexual harassment they experienced over five years before the harassment forming the basis of the employee's claim.  244 F.3d at 689.  The court noted that the probative value of this evidence was diminished by the admission of testimony by different co-workers about more recent harassment.  *Id.*  In contrast, evidence of discrimination occurring one to five years before the discrimination experienced by the plaintiff was admissible in *Lyons v. England*, 307 F.3d 1092, 1101-02, 1111-12 (9th Cir. 2002).

Here, each discriminatory incident plaintiff alleges happened many years before plaintiff herself suffered an adverse employment action; with the exception of Mary Aguirre, each incident happened over a decade before plaintiff was laid off.  Accordingly, it is likely that this evidence may well be excluded at trial under Rule 403, although the court does not prejudge the question. Even assuming this anecdotal evidence would not be admitted, the statistical evidence that plaintiff submitted, as well as the evidence that she was denied a promotion that male colleagues in her same position received, is sufficient at the prima facie stage to survive summary judgment.

### 2.  Legitimate, Nondiscriminatory Reason

As plaintiff has established that a trier of fact could find she has made out a prima facie case of discrimination, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Defendants contend that plaintiff's layoff was legitimate because the County eliminated her position for financial reasons.  (ECF 19 at 14.)  It is undisputed that the County experienced financial difficulties that required it to eliminate some staff in the District Attorney's office.  A reduction in force is a legitimate, nondiscriminatory reason for terminating an employee.  *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661 (9th Cir. 2002).

However, defendants have not pointed to any evidence supporting the conclusion they had legitimate reasons for not promoting plaintiff to the Chief of Investigation position, although they agreed at hearing that the lack of promotion was a separate adverse action experienced by plaintiff.  Accordingly, defendants have not met their burden to establish as a matter of law a legitimate, nondiscriminatory reason for this adverse employment action experienced by plaintiff.

The court denies defendant's request for summary judgment on plaintiff's gender discrimination claims under Title VII and FEHA.

### B.  Retaliation Under FEHA

Claims for retaliation under FEHA also follow the *McDonnell Douglas* burden-shifting framework.  *Yanowitz v. L'Oreal USA*, 36 Cal. 4th 1028, 1042 (Cal. 2005).   To make

1    out a prima facie case of retaliation under FEHA, plaintiff must show: "1) he or she engaged in

2    protected activity; 2) the employer subjected the employee to an adverse employment action;

3    and 3) a causal link between the protected activity and the adverse employment action."  *Id.*  If

4    plaintiff establishes a prima facie case, the burden of production shifts to defendants to show a

5    "legitimate non-retaliatory" reason for taking the adverse employment action.  *Id.*  If

6    defendants meet that burden, plaintiff must then raise a genuine issue of material fact

7    suggesting that defendants' legitimate non-retaliatory reason is pretextual.  *Id.*

8              Plaintiff asserts she was not selected as Chief Investigator once Ferrari retired in

9    2012 in retaliation for the internal gender discrimination complaint she made in July 2011.

10   (ECF 22 at 16.)  Defendants concede that filing the complaint was a protected activity and do

11   not argue there can have been no failure to promote plaintiff to Chief Investigator because

12   plaintiff was no longer working at the District Attorney's office.  However, defendants dispute

13   that there is a causal link between this adverse employment action and the discrimination

14   complaint.  (ECF 27 at 2-3.)  Plaintiff offers two pieces of evidence to support an inference of

15   causation.  First, she points to Willett's deposition testimony stating that, in addition to

16   Melgoza, he considered three outside candidates for the Chief Investigator position, although

17   he did not consider plaintiff.  (Willett Dep. at 89:14-22, 90:19-92:7, ECF 19-28.)  Second,

18   plaintiff cites to a statement from Willett's deposition suggesting he was offended by plaintiff's

19   filing of the complaint and admitting it was a factor in his decision not to consider her for the

20   position of Chief Investigator.  (ECF 22 at 16.)  The portions of Willett's deposition on which

21   plaintiff relies (Ex. 13, ECF 22-12) are not properly authenticated by the court reporter and thus

22   cannot be considered.  *Pavone*, 60 F.Supp.2d at 1045.

23             Plaintiff also argues that because she lost her job less than six months after filing

24   the internal complaint, this temporal proximity suggests there is a connection between her

25   complaint and the fact she was not selected to be Chief Investigator.  (ECF 22 at 17.)

26   Defendant contends there can be no causal link because plaintiff had already been laid off

27   before she filed the July 2011 complaint (ECF 19 at 19.)

28   /////

"To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Washington v. Cal. City Corr. Ctr.*, 871 F. Supp. 2d 1010, 1028-29 (E.D. Cal. 2012) (quoting *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)) (internal quotations omitted); *Cal. Fair Emp't & Housing Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1020 (2004).   Plaintiff may demonstrate causation through temporal proximity alone when a sufficiently short time elapsed after the protected activity.  *Washington*, 971 F. Supp. 2d at 1029.  Courts have held that a time lapse of nearly six months between the protected activity and the adverse employment action, on its own, is insufficient to show causation.  *Cf. Villiarimo*, 281 F.3d at 1065 (examining case law in which time lapses of four or five months were insufficient).  Here, despite the six months between the filing of plaintiff's complaint in July 2011 and Willett's decision to hire Melgoza in January 2012, the court finds that the evidence of Willett's decision to not consider plaintiff for the Chief position is sufficient to establish a prima facie case on summary judgment.  Because Ferrari did not retire until January 2012, it would have been impossible for plaintiff to have experienced the adverse employment action before that date.

Defendants assert that Melgoza's qualifications for the Chief position are a legitimate, nonretaliatory reason for hiring him instead of plaintiff.  (ECF 27 at 2-3.)  However, plaintiff has raised a question of fact as to whether this asserted reason was pretextual.  It is undisputed that plaintiff held a higher rank at the District Attorney's office before her layoff than Melgoza at the time he was promoted.   Accordingly, defendants' motion for summary judgment on this claim is denied.

C.      Failure to Correct Under FEHA

FEHA prohibits employers from "fail[ing] to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  CAL. GOV'T CODE § 12940(k).  Section 12940 is a statutory tort that requires a plaintiff to demonstrate a defendants' duty towards a plaintiff, breach of that duty, causation, and damages to the plaintiff.  *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 286-87 (Cal. 1998).  Reasonable steps include

promptly investigating discrimination claims, implementing anti-discrimination policies in the workplace, and putting a system in place to address discrimination claims. *Cal. Fair Employment & Housing Comm'n*, 122 Cal. App. 4th at 1024-25.  To meet its burden at summary judgment, defendant must demonstrate that it took such steps to address or prevent discrimination. *Washington*, 871 F. Supp. 2d at 1027.

Defendants argue that even assuming plaintiff suffered discrimination, there is no evidence that defendants breached their duty to conduct a reasonable investigation of the discrimination claim.  (ECF 19 at 20.)  But defendants do not cite to any evidence in the record to support the court's concluding as a matter of law that they took any action to prevent discrimination.  The court cannot grant summary judgment on this claim.  *See Washington*, 871 F. Supp. 2d at 1027.

Defendants' motion for summary judgment is DENIED.

DATED:  September 3, 2013.

_____
UNITED STATES DISTRICT JUDGE