1  JILL P. TELFER, ESQ. (State Bar No. 145450)
   LAW OFFICES OF JILL P TELFER
2  331 J STREET, SUITE 200
   SACRAMENTO, CA 95814
3  (916) 446-1916
   (916) 446-1726
4  E-Mail: jtelfer@telferlaw.com

5  Attorneys for Plaintiff
   **JANIS TRULSSON**

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11 **JANIS TRULSSON**,                    ) **CASE NO.: 2:11-cv-02986-KJM-DAD**
                                          )
12            **Plaintiff**,              )
                                          ) **PLAINTIFF'S REPLY TO DEFENDANT**
13     **vs.**                            ) **COUNTY   OF   SAN   JOAQUIN'S**
                                          ) **OPPOSITION TO PLAINTIFF'S MOTION**
14 **SAN   JOAQUIN   COUNTY,   THE**)      **FOR AWARD OF ATTORNEY FEES**
   **DISTRICT ATTORNEY'S OFFICE and**)
15 **DOES 1 through 10 inclusive,**       ) Hearing Date:        August 7, 2014
                                          ) Time:               10:00 a.m.
16            **Defendants.**             ) Courtroom:          3, 15th Floor
                                          ) Judge:              Hon. Kimberly Mueller
17 _____)

18

19                                  **I.**

20                           **INTRODUCTION**

21      Plaintiff Janis Trulsson ("Trulsson") requests her attorney Jill P Telfer ("Telfer")  be paid

22 reasonable attorneys' fees in the sum of  $ 447,791.25[1] pursuant to  Government Code §12965(b) for

23 Telfer's representation of Trulsson, who  prevailed at trial with a  $2,059,708 verdict after the jury

24 determined Defendant County of San Joaquin ("County") retaliated against Trulsson and failed to

25 correct the retaliation (Gov. Code, §§ 12940(h) and 12940(k). In opposing Trulsson's fee request the

26 County does not dispute  Telfer's hourly rate of $450 or the 665 hours spent in prosecuting the case.

27 The County instead  argues the lodestar figure of $298,527.50  should be reduced by two-thirds

28
   ─────────────
      [1]This amount represents the lodestar figure of $298,527.50 with a 1.5 multiplier

1  because of Trulsson's  limited success in the case and contends  a multiplier is not appropriate since

2  Trulsson did not prevail on her claim of  gender discrimination which the County  deems to be of

3  more public interest, Telfer was able to handle other cases during the pendency of the 29 month case,

4  and the lodestar figure based on the hours spent on the case and the hourly rate  takes into account

5  the challenges presented by the case and Telfer's skill level .

6        The arguments raised by the County do not have merit.  The verdict was significant because it

7  held one of the County's elected officials, District Attorney James Willett ("D.A.Willett"),

8  accountable for violating the law with a substantial damage award.  Although the jury did not find

9  D.A. Willett's actions were motivated by a discriminatory intent [2], it did determine Trulsson's lay-off

10 after thirty (30) years of service and the denial of promotion to Chief Investigator were retaliatory

11 and the County failed to prevent the retaliation. The retaliation and failure to prevent retaliation

12 claims for which Trulsson  prevailed are inextricably intertwined with her claim for gender

13 discrimination based on a common core of facts and as a result, the request that Trulsson's attorney

14 fees be reduced   is not appropriate.  An employee is protected against retaliation if the employee

15 reasonably and in good faith believed gender discrimination existed when she made her complaint or

16 opposed the discrimination even if the jury later determines their was no gender discrimination.

17 *Miller v. Department of Corrections* 36 Cal. 4th 446, 473-474.  As a result, Trulsson had to present

18 to the trier of fact the pattern of gender discrimination she observed as of the times she complained

19 of gender discrimination.  Likewise, Trulsson had to prove pretext to prevail on her victorious

20 claims. This required Trulsson to call witnesses to impeach the business reasons articulated by the

21 County for the adverse acts take against Trulsson.

22       Eradicating retaliation against employees who in good faith raise discrimination claims is of

23 equal importance to eradicating discrimination.  Protection for those who raise complaints will be the

24 only way to eliminate discrimination.  While Telfer was able to handle other cases during the 29

25 months this case was pending, unquestionably there were cases that Telfer could not undertake due

26 to her commitment to Trulsson.  Great challenges and risk exist in suing a public entity funded by tax

27 dollars.  Law enforcement entities garner respect.  Trulsson was working  in a male-dominated field.

28

[2]Two of the jurors did determine D.A Willett engaged in gender discrimination.

1   There had been a significant downturn in the economy.  The County had the ability to push the panic

2   button that if the District Attorney does not have unfettered discretion to make employment

3   decisions, crime can go up affecting the health and safety of the general public.  Given these risks

4   and the skill exhibited in prosecuting Trulsson's case, the 1.5 multiplier is appropriate.

## II.

## LEGAL ANALYSIS

### A.   THE LODESTAR FIGURE SHOULD NOT BE REDUCED BECAUSE THE CLAIMS WERE INEXTRICABLY INTERTWINED AND THE VERDICT WAS SUBSTANTIAL.

The County contends since Trulsson did not prevail on the gender discrimination claim, the Lodestar figure should be reduced by two-thirds[3].  However, the retaliation claims and the discrimination claim are based on the same common core of facts, namely D.A Willett laid Trulsson off after 30 years of employment while requesting his friend, former Chief Investigator Larry Ferrari to delay his retirement for six months and then failed to appoint Trulsson to Chief Investigator when Ferrari ultimately retired.  The claims each also require a finding of pretext.  As a result, Trulsson had to prove the articulated business reason(s) offered by the County was untrue. The only difference between the two claims are what motivated the conduct; a discriminatory or retaliatory animus.

The 9th Circuit in *Thorne v. El Segundo* 802 F.2d 1131 (1986), provided the two-part analysis to be followed in those cases in which a plaintiff does not succeed on all claims:  (1) the court determines whether the claims upon which the plaintiff failed to prevail were *related* to the plaintiff's successful claims.  If unrelated, the final fee award may not include time expended on the unsuccessful claims.  If the unsuccessful and successful claims are *related*, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Thorne, supra*, 802 F.2d at 1141 (quoting *Hensley v. Eckerhart* 461 U.S. 424,  435 (1983)).

///

---

[3]This figure appears to be arbitrary and not based on any specific facts or law.

1
2
3
4
5
6
7

The U.S. Supreme Court in *Hensley* explained that claims are unrelated if they are "distinctly different claims for relief that are based on different facts and legal theories."  Claims are related if they "<u>involve a common core of facts</u> or [are] based on related legal theories." (*Id*. at 434-35.)(emphasis added) The focus is to be on whether the unsuccessful and successful claims arose out of the same "course of conduct."  If they did not, they are unrelated under *Hensley*. (See *Cabrales v. County of Los Angeles* 935 F.2d 1050, 1052 (9th Cir. 1991).  Here the claims are definitely related and based on the same course of conduct.

8
9
10
11

Defendant relies on *Muniz v. United Parcel Service, Inc.*, 738 F.3d 214, 224 (9th Cir. 2013) when arguing Trulsson had limited success. *In Muniz* the jury awarded $27,280 in damages and the trial court awarded $697,972 in attorney fees.  Here, the damages are over four times greater than the fees requested.

12
13
14
15
16
17
18
19
20
21
22
23

Defendant contends the facts required to establish the two c l a i m s of retaliation were limited to plaintiff's belief regarding Mary Aguirre, the fact that she filed a Rule 20 Complaint, and facts establishing DA Willett's knowledge of those complaints and how the complaints impacted his decisions.  This is untrue.  First, Trulsson raised concerns of the treatment of other women, not just Mary Aguirre. After Trulsson filed a Rule 20 complaint of gender discrimination, when she was interviewed by Investigator Jane Kow ("Kow"), Trulsson provided the names of other females she believed were subjected to discrimination.  The names she provided included Mary Aguirre, Patricia Rieta Garcia, Barbara Kronlund, Delanie Pimentel and Jane Davis.  The fact the County chose to not have Kow interview these witnesses was probative of its failure or at least lack of interest in preventing discrimination and retaliation.  Further, Willett was given an opportunity during the Kow investigation to refute any alleged wrongful acts against these women which further corroborates the cause of action. (*Telfer Declaration ¶6 , Exhibit 22 and KK*)

24
25
26

In addition, the California Supreme Court has explained adverse acts must be reviewed in their entirety and take into consideration the unique circumstances of the affected employee. *Yanowitz v. L'Oreal, USA, Inc.* (2005*)* 36 Cal.4th 1028

27
28

"retaliation claims are inherently *fact* specific in the impact of an employer's action in a particular case must be evaluated in context.

Accordingly, although an adverse employment action must materially affect the terms, conditions or privileges of employment to be actionable, *the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim.*" (Emphasis added.) (*Id.* at 1053)

Therefore, the County's argument of limited testimony in retaliation cases is not supported by case law.  Defendant contends the only witnesses pertinent to plaintiff's retaliation claim were: plaintiff, Mary Aguirre, Larry Ferrari ("Ferrari"), Kenneth Melgoza, DA Willett, and the two economists, which is not so.  Plaintiff not only had to prove she engaged in protected activities and was subjected to an adverse act, she must also prove a causal link which would include pretext. Cynthia Clays, the Director of Human Resources was called first so she could educate the jury on the County and its various departments, explain the County's policies regarding discrimination and retaliation, and provide a foundation to prove pretext.  She also testified that the County did not look into whether or not Trulsson was retaliated against or discriminated against upon learning she was not selected to be Chief Investigator.  *(Telfer Declaration ¶ 5 , Exhibit 5.)*  This evidence is probative of the failure to prevent claim.

The discrimination investigation by Kow was  very relevant to Plaintiff's retaliation claim.  Kow's testimony is probative of pretext.  Willett and Chief Investigator Ferrari told Kow the alleged business reasons for Trulsson's lay-off and Ferrari's delay of retirement. The reasons given to Kow by Willett and Ferrari for the delay in retirement (the need for Ferrari to delay retirement to protect Willett from death threats), differed than those provided at deposition and trial.  Likewise, Ferrari and Willett told Kow Ferrari planned to retire at the time of Trulsson's lay-off because that is when he retirement maximized, however at trial Ferarri and Willett contradicted their prior statements to Kow. (*Telfer Declaration ¶7, Exhibit 22 and KK*)  Since there are rarely eye-witnesses to an employer's thought process, a Plaintiff must show circumstantially the

discriminatory or retaliatory intent.  Attacking key witnesses' credibility through impeachment or shifting testimony is one way Telfer was able to prove retaliation.

The discrimination and retaliation claims in this case share the same common core of facts. The only difference between them is what motivated the two adverse acts taken against Trulsson. As a result, the witnesses called at trial were probative of both the gender discrimination and retaliation claims.  Barbara Kronlund's testimony was probative of retaliation. When Kronlund considered filing a grievance for disparate treatment while employed at the County, Willett came to her office and told her "you are bright, but if you want a future with this office, you will drop this," or words to that effect. (*Emphasis added*).  Trulsson's claim for gender discrimination was inextricably intertwined with her claims for retaliation and as a result there should be no reduction in the lodestar amount.

## B.    A MULTIPLIER IS APPROPRIATE TO THE LODESTAR FIGURE GIVEN THE CHALLENGES INVOLVED IN THE CASE

The ultimate goal is to encourage suits effectuating a strong public policy by awarding substantial attorneys' fees to those who successfully bring such suits. (See *Woodland Hills Residents Assn v. City Council* (1979) 23 Cal.3d 917, 933 (quoting *Serrano III*, *supra.*, 20 Cal.3d at 43); see also *San Bernardino Valley Audubon Soc. v. County of San Bernardino* (1985) 155 Cal.App.3d 738, 755 (fee award must be large enough "to entice competent counsel to undertake difficult public interest cases").)

The 1.5 multiplier of the lodestar is appropriate because of the significant public interest of this case at eradicating retaliation by a powerful public official when the County chose to turn a blind eye.  District Attorney's Offices and law-enforcement agencies are supposed to enforce the law to protect citizens.  These entities are given great deference because of their importance in

ensuring public safety.  Given this deference and given their power, few are courageous enough or willing to take the risk of bringing them to Court to hold them accountable for violating the law. The County chose to not prevent the retaliation by taking corrective action against Trulsson.  In fact, it retained an employment defense lawyer to investigate Trulsson's claims who found no discrimination.  This only compounded the risk in taking the case.

The legislative purpose in enacting the FEHA is "to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment (Cal. Gov. Code § 12920). Denying employment opportunity… foments domestic strife and unrest, deprives the state of the fullest utilization … and substantially and adversely affects the interest of employees, employers, and the public in general. "It is the policy of this part to provide effective remedies that will eliminate these discriminatory practices. *Id*.

### III.

### CONCLUSION

Based on the foregoing, Trulsson respectfully requests the Court to grant attorney fees in the sum of $447,791.25 given the risk of not being paid, the inevitable delay in receiving payment, and to encourage plaintiff attorneys and other civil rights attorneys to undertake public interest litigation of similar importance in the future.

Dated: July 31, 2014

LAW OFFICES OF JILL P. TELFER
*A Professional Corporation*

*/s/ Jill P. Telfer*
_____

JILL P. TELFER
Attorneys for Plaintiff
**JANIS TRULSSON**