UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANIS TRULSSON, | No.  2:11-CV-02986 KJM DAD |
| Plaintiff, | |
| v. | ORDER |
| COUNTY OF SAN JOAQUIN DISTRICT ATTORNEY'S OFFICE, | |
| Defendant. | |

This matter is before the court on the renewed motion by San Joaquin County ("defendant" or the "County") for Judgment as a Matter of Law ("JMOL") (ECF No. 157), or, in the alternative, for a New Trial (ECF No. 156).  Plaintiff Janis Trulsson ("plaintiff") opposes both motions.  (ECF Nos. 173 & 174.)  Defendant has replied.  (ECF Nos. 177 & 176.)

The court held a hearing on these matters on August 7, 2014, at which Jill Telfer appeared for plaintiff and Velma Lim appeared for defendant.  As explained below, the court DENIES defendant's motions.

I.    BRIEF BACKGROUND

Plaintiff filed this employment discrimination case on November 9, 2011.  (ECF No. 1.)  Through various pre-trial motions and rulings, the action was eventually narrowed so that the case proceeded to trial on the following claims only: (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) gender discrimination in violation of California's

1

1   Fair Employment and Housing Act ("FEHA"); (3) retaliation in violation of the FEHA; and

2   (4) failure to prevent retaliation and discrimination in violation of the FEHA.  (ECF No. 82.)

3           The jury trial commenced on March 10, 2014.  (ECF No. 109.)  At the conclusion

4   of the evidence, defendant's counsel made an oral motion for JMOL under Federal Rule of Civil

5   Procedure 50(a).  (ECF No. 119.)  The court orally denied defendant's motion at that time.  On

6   the same day, after the court orally denied defendant's motion, defendant filed a written motion

7   for JMOL, raising the same arguments.  (ECF No. 123.)  Subsequently, the court clarified that its

8   oral denial of defendant's motion for JMOL extended to denial of the written motion as well.

9   (ECF No. 146.)

10          The jury was instructed and began its deliberations on March 28, 2014.  (ECF

11  No. 127.)  On March 31, 2014, the jury returned its verdict in favor of plaintiff, finding

12  (1) defendant had retaliated against plaintiff for complaining about gender discrimination and

13  (2) defendant had failed to take all reasonable steps to prevent retaliation.  (ECF No. 145 at 6–8.)

14  The jury awarded plaintiff damages in the amount of $2,059,708.  (*Id.* at 10.)  At the same time,

15  the jury found plaintiff did not prove by a preponderance of the evidence that defendant

16  discriminated against plaintiff based on plaintiff's gender.  (*Id.* at 2–5.)  In conformance with the

17  jury verdict, the court entered a judgment in plaintiff's favor.  (ECF No. 147.)

18  II.      LEGAL STANDARD ON A RENEWED MOTION FOR JMOL

19          Rule 50(a)(1) of the Federal Rules of Civil Procedure provides as follows:

20          If a party has been fully heard on an issue during a jury trial and the
            court finds that a reasonable jury would not have a legally sufficient
21          evidentiary basis to find for the party on that issue, the court may:
            (A) resolve the issue against the party; and (B) grant a motion for
22          judgment as a matter of law against the party on a claim or defense
            that, under the controlling law, can be maintained or defeated only
23          with a favorable finding on that issue.

24  Fed. R. Civ. P. 50(a)(1).  Rule 50(b) governs renewed motions for judgment as a matter of law

25  made under Rule 50(a) and provides that the court may: "(1) allow judgment on the verdict, if the

26  jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of

27  law."  Fed. R. Civ. P. 50(b).  A Rule 50(b) motion for JMOL is not treated as a separate motion;

28  instead, it is a renewed Rule 50(a) motion.  *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951,

1    961 (9th Cir. 2009).  Before the court submits a case to the jury, a party must make a Rule 50(a)

2    motion for JMOL.  *Id.*  If the court denies the motion, and if the jury returns a verdict against the

3    movant, the movant may renew its motion under Rule 50(b).  *Id.*  As that motion is a renewed

4    motion, it must be limited to the same grounds as asserted in the prior Rule 50(a) motion; "a party

5    cannot properly raise arguments in its post-trial motion for [JMOL] under Rule 50(b) that it did

6    not raise in its preverdict Rule 50(a) motion." *Id.* (internal quotation marks omitted).

7            In reaching the merits of a Rule 50 motion, the court must view the evidence in the

8    light most favorable to the party in whose favor the jury returned a verdict and must draw all

9    reasonable inferences in favor of the non-moving party.  *First Nat. Mortgage Co. v. Federal*

10   *Realty Inv. Trust*, 631 F.3d 1058, 1067 (9th Cir. 2011); *Lakeside–Scott v. Multnomah County*,

11   556 F.3d 797, 802 (9th Cir. 2009); *Josephs v. Pac. Bell,* 443 F.3d 1050, 1062 (9th Cir. 2006);

12   *City Solutions, Inc. v. Clear Channel Commc'ns, Inc.*, 365 F.3d 835, 839 (9th Cir. 2004); *see also*

13   *A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013) (when evaluating a Rule 50

14   motion the court should "give significant deference to the jury's verdict and to the nonmoving

15   part[y] . . .").

16           "A district court can set aside a jury verdict and grant JMOL only if, under

17   governing law, there can be but one reasonable conclusion as to the verdict and only if there is no

18   legally sufficient basis for a reasonable jury to find for that party on that issue." *Jules Jordan*

19   *Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1155 (9th Cir. 2010) (internal quotation marks

20   omitted); *see also A.D.*, 712 F.3d at 453 ("Such a judgment is proper if the evidence, construed in

21   the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that

22   conclusion is contrary to the jury's verdict." (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir.

23   2002))); *First Nat. Mortgage Co.*, 631 F.3d at 1067–68 (A verdict is to be upheld if supported by

24   substantial evidence, "even if it is also possible to draw a contrary conclusion[,]" and the court

25   "must disregard evidence favorable to the moving party that the jury is not required to believe,

26   and may not substitute its view of the evidence for that of the jury[]" (quoting *Pavao,* 307 F.3d at

27   918)); *Lakeside–Scott*, 556 F.3d at 802 ("Judgment as a matter of law is proper when the evidence

28

1    permits only one reasonable conclusion and the conclusion is contrary to that reached by the

2    jury." (quoting *Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003))).

3         A.   Discussion

4           In support of its motion for JMOL, defendant makes two principal arguments.

5    First, defendant argues plaintiff did not produce sufficient evidence to establish her retaliation

6    claim based on defendant's layoff of plaintiff and decision not to promote plaintiff to the Chief

7    Investigator position.  (*See* ECF No. 157-1 at 2–8.)  Second, defendant argues plaintiff did not

8    produce sufficient evidence to establish her failure to prevent retaliation claim.  (*See id.* at 9.)

9           1.   Plaintiff's Claim for Retaliation

10          The FEHA prohibits retaliation against "any person."  Cal. Gov't Code

11   § 12940(h).  To establish a prima facie case of retaliation under the FEHA, plaintiff must show:

12   (1) she engaged in a protected activity; (2) she was subject to an adverse employment action; and

13   (3) there was a causal link between the protected activity and the adverse action.  *Yanowitz v.*

14   *L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

15          a.   Retaliatory Layoff

16          With respect to plaintiff's retaliatory layoff claim, the parties do not dispute that

17   the first and second elements of the test for retaliation are met.  Rather, defendant contends only

18   there was no causal link between plaintiff's protected activity and the layoff.  Defendant argues

19   plaintiff did not produce sufficient evidence to establish a claim for retaliation because plaintiff

20   did not present sufficient evidence showing "the individual who made the decision to lay her off,

21   District Attorney [("DA")] Willett, had knowledge that she had engaged in protected activity";

22   therefore, plaintiff did not prove that her layoff was in retaliation for plaintiff's complaints about

23   gender discrimination.  (ECF No. 157-1 at 2–3.)  Plaintiff counters "[d]irect and circumstantial

24   evidence was presented to the jury of the causal connection between the adverse acts and

25   [plaintiff's] protected activity, including Willett's knowledge of Trulsson's complaints."  (ECF

26   No. 174 at 3.)

27          As noted above, to establish her retaliation claim, plaintiff must show a causal link

28   between her protected activity and the adverse action.  *Morgan v. Regents of Univ. of Cal.*,

4

88 Cal. App. 4th 52, 69 (2000).  Such a causal link may be established by an inference derived from circumstantial evidence, such as the employer's knowledge of the employee's engagement in a protected activity or the proximity in time between the protected action and the employment decision.  *See id.* at 69–70.  But "[e]ssential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."  *Id.* at 70.

Here, viewing the evidence in the light most favorable to plaintiff, the nonmoving party, there is sufficient evidence in the record for a reasonable jury to have found that defendant had knowledge of plaintiff's complaints about gender discrimination.  Specifically, the Former Chief Investigator Larry Ferrari testified that on occasion plaintiff would complain about DA James Willett's decisions, including potential discriminatory treatment of Deputy District Attorney Mary Aguirre.  (*See* Ferrari Test. 1423:14–1427:6; 1429:22–30.[1])  Ferrari also testified he would relay plaintiff's complaints to Willett.  (*See id.* 1393:17–1394:22.)  In light of Ferrari's testimony, it cannot be said that "under the governing law, there can be but one reasonable conclusion" as to Willett's knowledge and that Willett was unaware of plaintiff's complaints. *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 510 (9th Cir. 2004) (internal quotation marks omitted).  A reasonable jury could have concluded that because plaintiff voiced her complaints to Ferrari, including her belief that Aguirre was subject to gender discrimination, and because Ferrari relayed plaintiff's complaints to Willett, Willett became aware of plaintiff's complaints about gender discrimination, and particularly plaintiff's complaints about Willett's treatment of Aguirre.  Willett did not testify to the contrary.  In any event, it was for the jury to resolve any differences between the parties' versions of events.

Accordingly, the court DENIES defendant's renewed motion for JMOL as to defendant's layoff of plaintiff.

b.  Failure to Promote

As to failure to promote, defendant does not dispute the first "protected activity" element of a FEHA retaliation claim.  Rather, it argues as a threshold matter that plaintiff did not

---

[1] All of the citations to a person's testimony refer to the trial transcript.

1   establish an employer-employee relationship existed between plaintiff and defendant at the time

2   of Kenneth Melgoza's appointment to the Chief Investigator position.  (ECF No. 157-1 at 3–6.)

3   Defendant also avers plaintiff did not suffer an adverse employment action.  (*Id.* at 6–8.)  Finally,

4   defendant contends plaintiff did not establish a causal connection between her complaint and

5   defendant's decision not to appoint her to the Chief Investigator position.  (*Id.* at 8–9.)

6            The court addresses each argument in turn.

7                  i.   The Requirement of Employer and Employee Relationship

8            Defendant reasons plaintiff did not establish an employer and employee

9   relationship because plaintiff was not defendant's employee at the time of Melgoza's

10  appointment.  Defendant says it had no obligation to "reach out to every potential candidate"

11  expressing an interest in the position, and plaintiff "took no affirmative steps to make sure the

12  County was aware that she was interested in unwinding her retirement and returning to County

13  employment."  (*Id.* at 6 (emphasis omitted).)  Plaintiff responds that former employees are

14  protected against retaliatory actions by their employers to the same extent as current employees.

15  (ECF No. 174 at 4–7.)

16           As noted above, the FEHA prohibits retaliation against "any person."  Cal. Gov't

17  Code § 12940(h).  The Code defines a "person" as "one or more individuals . . . ."  *Id.*

18  § 12925(d).  The Legislature has indicated that the provisions of the FEHA should be construed

19  liberally for the accomplishment of its purposes.  *Id.* § 12993(a) ("The provisions of this part shall

20  be construed liberally for the accomplishment of the purposes of this part."); *accord Fitzsimons v.*

21  *Cal. Emergency Physicians Med. Grp.*, 205 Cal. App. 4th 1423, 1429–30 (2012).

22           Defendant's argument, that retaliation under the FEHA requires an "employment

23  nexus" in that there must be an ongoing employer-employee relationship, is unsupported by

24  precedent.  While no published California case addresses the precise circumstances of this case,

25  the California Court of Appeal has held that former and current applicants for an employee

26  position are covered under the FEHA.  *See Sada v. Robert F. Kennedy Med. Ctr.*, 56 Cal. App.

27  4th 138, 159–61 (1997) (holding that an employer-employee relationship is not a requirement of a

28  /////

6

1  FEHA retaliation claim and concluding the anti-retaliation provision of the FEHA covers

2  applicants for employee positions.).

3          In *Sada*, in addressing the defendant's argument that an applicant for a job position

4  should not be covered under the FEHA, the court held that:

5          It does not matter that the [defendant] may have retaliated against
       [the plaintiff] *after* the hiring decision was made, i.e., when [the
6       plaintiff] was technically a "former applicant." By definition,
       "retaliation" occurs only after the applicant has complained about
7       not getting the job or after she has begun to participate in a
       proceeding under the Act.  At that point, she is obviously no longer
8       applying for the position.  She is nonetheless permitted to pursue a
       retaliation claim because it arises out of the employer's allegedly
9       discriminatory rejection of her as an applicant. To hold otherwise
       would insulate a whole category of retaliatory conduct from
10      liability.

11  56 Cal. App. 4th at 160–61 (emphasis in original).

12          Significantly, in reaching its conclusion, the *Sada* court cautioned against

13  interpreting FEHA's anti-retaliation provision in a way that would encourage silence among

14  persons who reasonably believe an employer has engaged in unlawful conduct.  *Id.* at 160.

15  Because "California courts often look to federal decisions interpreting [federal anti-discrimination

16  statutes]" for assistance in interpreting the FEHA, *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798,

17  812 (2001), the Supreme Court's decision in *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997),

18  provides guidance in the instant case.  In *Robinson*, the Supreme Court faced the question

19  whether the term "employees," as used in § 704(a) of Title VII, covered former employees.  *Id.* at

20  339.  The Court held that former employees were covered under § 704(a).  *Id.* at 346.  In so

21  holding, the Court was persuaded by the argument that

22          exclusion of former employees from the protection of § 704(a)
       would undermine the effectiveness of Title VII by allowing the
23      threat of postemployment retaliation to deter victims of
       discrimination from complaining . . . and would provide a perverse
24      incentive for employers to fire employees who might bring Title
       VII claims.
25

26  *Id.*

27          If the language of Title VII, while "considerably more restrictive than the language

28  of section 12940(h)," applies to former employees, then under the circumstances of this case and

7

1   in light of the FEHA's broader language covering "any person," the court finds that plaintiff

2   introduced sufficient evidence at trial to support her retaliation claim. *See Fitzsimons*, 205 Cal.

3   App. 4th at 1429 ("Because the FEHA is remedial legislation, which declares '[t]he opportunity

4   to seek, obtain and hold employment without discrimination' to be a civil right . . . , and expresses

5   a legislative policy that it is necessary to protect and safeguard that right . . . , the court must

6   construe the FEHA broadly, not . . . restrictively." (internal quotation marks and citation omitted;

7   last ellipsis retained as in original)).  If the court were to find otherwise, employers would have no

8   disincentive against postemployment discrimination and current employees would be discouraged

9   from bringing FEHA claims out of fear of postemployment retaliation.  Viewing the evidence in

10  the light most favorable to plaintiff, there is sufficient evidence in the record for a reasonable jury

11  to have found that plaintiff stated a claim of retaliation for defendant's decision not to promote

12  her to Chief Investigator.

13          The County's argument that plaintiff did not take affirmative steps to create an

14  employment relationship after plaintiff's retirement is also unavailing.  (ECF No. 157-1 at 5–6.)

15  Plaintiff's theory of the case is that plaintiff's layoff was unlawful in the first place, therefore she

16  did not retire "as a result of a legitimate reduction in force[]" (*id.* at 6), as defendant argues.

17  (ECF No. 174 at 2–3.)  At trial, Human Resources Director Cynthia Clays testified that the DA

18  had complete discretion in deciding whom to hire for at-will management positions, including for

19  the Chief Investigator position.  (Clays Test. 273:19–274:2.)  Another attorney at the DA's office

20  confirmed that lack of official process by which management positions were filled.  (Rieta-Garcia

21  Test. 585:4–22.)  Most importantly though, the court's decision is not premised on plaintiff's

22  having a duty to create an employment relationship.  Rather, "employment nexus" is satisfied by

23  plaintiff's status as a former employee who, in this case, had been in line for the Chief's position.

24          Furthermore, if the jury believed plaintiff's evidence that there was no formal

25  interview or application process for Chief Investigator, then the jury could have also believed that

26  plaintiff had no opportunity to apply for the position, especially after she had been laid off.  If

27  plaintiff did not have the opportunity to apply for the Chief Investigator position, she could not

28  have created an employment relationship by her own acts, as defendant argues.  In effect, the jury

8

1  could have reasonably found defendant placed plaintiff in a position where plaintiff would be

2  unable to apply for the Chief Investigator position.  The court rejects defendant's argument that

3  because plaintiff did not take affirmative steps to establish an employment relationship with the

4  County, plaintiff cannot establish the County's decision not to promote her to the Chief

5  Investigator position was retaliatory.

6                          ii.      The Requirement of an Adverse Employment Action

7          Defendant argues that defendant's decision not to promote is distinct from the

8  layoff decision and must be considered separately.  (ECF No. 157-1 at 7.)  Viewing the two

9  actions separately, defendant argues, the terms and privileges of plaintiff's employment were not

10 altered by defendant's decision to promote Melgoza because at that time plaintiff was a mere

11 "non-employee retiree."  (*Id.* at 8.)  Accordingly, defendant concludes "plaintiff has not

12 established, by a preponderance of the evidence, that she suffered an adverse action as a result of

13 [defendant's] decision to appoint an individual" other than plaintiff to Chief Investigator  *Id.*

14         Plaintiff counters the facts of the present case are unique because there was no

15 formal application process for the Chief Investigator position.  Rather, there was a succession

16 plan, whereby plaintiff, the then-assistant Chief Investigator, would have been promoted to Chief

17 Investigator upon the prior Chief's retirement.  (ECF No. 174 at 8.)

18         Retaliation claims under the FEHA contemplate that the trier of fact should

19 consider the unique circumstances of each case.  The California Supreme Court has observed that:

20
21
22
23
24
> Retaliation claims are inherently fact specific, and the impact of an employer's action in a particular case must be evaluated in context. Accordingly, although an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim.

25 *Yanowitz*, 36 Cal. 4th at 1052.  Moreover, "the phrase 'terms, conditions, or privileges' of

26 employment must be interpreted liberally and with a reasonable appreciation of the realities of the

27 workplace . . . to afford employees the appropriate and generous protection against employment

28 discrimination that the FEHA was intended to provide."  *Id.* at 1054.  However, "[m]inor or

1    relatively trivial adverse actions or conduct by employers . . . that, from an objective perspective,

2    are reasonably likely to do no more than anger or upset an employee cannot properly be viewed

3    as materially affecting the terms, conditions, or privileges of employment and are not actionable."

4    *Id.*  Indeed, "[i]t is appropriate to consider plaintiff's allegations collectively under a totality of

5    the circumstances approach."  *Id.* at 1052 n.11.  It is undisputed that a failure to promote is an

6    adverse employment action within the meaning of the FEHA.  *Jones v. Dep't of Corr. & Rehab*.,

7    152 Cal. App. 4th 1367, 1380 (2007).

8            Here, the court finds a reasonable jury could have found plaintiff was subject to an

9    adverse employment action.  In support of its conclusion that "plaintiff failed to establish . . . she

10   suffered an adverse action[,]" defendant makes the same arguments as for the employment nexus

11   requirement above: "She was a retired annuitant both before and after the decision.  She took no

12   steps to become an 'applicant' or to indicate to the County that she was interested in the

13   position."  (ECF No. 177 at 7.)

14           The court finds those arguments unpersuasive.  First, plaintiff was under no duty to

15   establish an employer-employee relationship as a prerequisite to bringing a retaliation claim

16   based on failure to promote.  Second, if the jury believed plaintiff's theory of the case, the jury

17   could have reasonably found defendant's decision not to promote plaintiff to the Chief

18   Investigator position was an adverse action within the meaning of the FEHA.  The jury could

19   have construed each alleged retaliatory act to be a part of a larger scheme to place plaintiff in a

20   position whereby she would be unable to apply for the Chief Investigator position.  The jury

21   could have found there was a retaliatory course of conduct where a series of separate acts together

22   constituted an adverse employment action even if none of the acts individually was actionable.

23   *See Yanowitz*, 36 Cal. 4th at 1055 ("Enforcing a requirement that each act separately constitute an

24   adverse employment action would subvert the purpose and intent of the statute[,]" *id.* at 1056).

25           There is sufficient evidence in the record for a reasonable jury to have found that

26   plaintiff was subject to an adverse employment action.

27   /////

28   /////

10

iii.     Causal Connection

Defendant argues plaintiff did not prove that "a causal connection exists between her . . . [c]omplaint and . . . Willett's decision to appoint a different individual to the position of Chief Investigator." (ECF No. 157-1 at 8.)  Plaintiff counters she introduced sufficient direct and circumstantial evidence showing defendant did not consider plaintiff for the promotion because of plaintiff's complaints of gender discrimination.  (ECF No. 174 at 11.)

To establish the requisite causal link, a plaintiff must provide evidence of an employer's knowledge of an employee's protected activity.  *See Morgan*, 88 Cal. App. 4th at 69–70.  In this case, as discussed above, plaintiff has introduced sufficient evidence from which a reasonable jury could have found defendant knew of plaintiff's complaints and decided not to promote plaintiff because of them.  (*See* ECF No. 174 at 11–12.)  In addition, when asked whether he considered plaintiff for the Chief Investigator position in 2011, Willett testified he did not, in part because plaintiff had filed "the internal complaint of discrimination against [him]." (Willett Test. 959:25–960:8.)  Willett further testified that he "was mad" at plaintiff (*id.* 960:8–9) and irritated with her (*id.* 960:18–19).  From that testimony and from the testimony discussed above, a jury could have reasonably concluded plaintiff established the causal link as required to prove her retaliation claim.

Accordingly, the court DENIES defendant's renewed motion for JMOL as to plaintiff's retaliation claim based on defendant's decision not to promote plaintiff.

2.  Plaintiff's Claim for Failure to Prevent Retaliation

Defendant argues only that because plaintiff did not prove her retaliation claim, plaintiff cannot proceed on a failure to prevent retaliation theory.  (ECF No. 157-1 at 9.)  Plaintiff counters that because the jury returned a verdict in favor of plaintiff on the retaliation claim, it was proper for the jury to also find for plaintiff on her failure to prevent retaliation claim.  (ECF No. 174 at 12–13.)

The parties agree and the court notes that to establish a claim for failure to prevent retaliation, a plaintiff must first establish the underlying retaliation.  (*See* ECF No. 157-1 at 9 & ECF No. 174 at 12–13.)  *See also Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289

11

1   (1998) ("Employers should not be held liable to employees for failure to take necessary steps to

2   prevent [unlawful] conduct, except where the actions took place and were not prevented.").  Here,

3   because the court finds plaintiff has introduced sufficient evidence from which the jury could

4   have found in favor of plaintiff on her retaliation claim based on defendant's layoff of plaintiff

5   and decision not to promote, the court DENIES defendant's renewed motion for JMOL as to

6   plaintiff's claim for failure to prevent retaliation.

7   III.     LEGAL STANDARD ON A MOTION FOR A NEW TRIAL

8           Under Federal Rule of Civil Procedure 59(a)(1), the court may grant a new trial

9   "on all or some of the issues . . . (A) after a jury trial, for any reason for which a new trial has

10  heretofore been granted in an action at law in federal court . . . ."  Because "Rule 59 does not

11  specify the grounds on which a motion for a new trial may be granted," district courts must look

12  to "grounds that have been historically recognized."  *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d

13  1020, 1035 (9th Cir. 2003).  These grounds include, but are not limited to (1) a verdict that is

14  contrary to the weight of the evidence or is based on false or perjurious evidence; (2) an excessive

15  award of damages; or (3) unfairness to the moving party.  *Molski v. M.J. Cable, Inc.*, 481 F.3d

16  724, 729 (9th Cir. 2007).  A court may also order a new trial if an erroneous evidentiary ruling

17  substantially prejudiced a party or if the court's instructions were erroneous or inadequate.

18  *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008); *Jazzabi v. Allstate Ins.*

19  *Co.*, 278 F.3d 979, 985 n.24 (9th Cir. 2002).

20          When considering a motion for a new trial based on the clear weight of the

21  evidence, "[a] jury verdict should be set aside only when the evidence permits only one

22  reasonable conclusion, and that conclusion is contrary to the jury's verdict."  *DSPT Int'l, Inc. v.*

23  *Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) (internal quotations omitted).  "[I]f the jury's verdict

24  is not clearly against the weight of the evidence, the trial court abuses its discretion in ordering a

25  new trial."  *Kode v. Carlson*, 596 F.3d 608, 613 (9th Cir. 2010) (citing *Roy v. Volkswagen of Am.,*

26  *Inc.*, 896 F.2d 1174 (9th Cir. 1990)).  However, "[t]he judge can weigh the evidence and assess

27  the credibility of witnesses, and need not view the evidence from the perspective most favorable

28  to the prevailing party."  *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371

1    (9th Cir. 1987).  The burden of proving the need for a new trial lies with the party bringing the

2    motion.  *Conwright v. City of Oakland*, No. 09-2572, 2012 WL 1945494, at *6 (N.D. Cal.

3    May 30, 2012); *Anglo–American Gen. Agents v. Jackson Nat'l Life Ins. Co.*, 83 F.R.D. 41, 43

4    (N.D. Cal. 1979).

5              A.  <u>Discussion</u>

6                    Defendant makes three principal arguments in support of its motion for a new trial.

7    First, defendant argues "the jury instruction and verdict form were erroneous[.]"  Second, "there

8    was a lack of evidence to support the essential elements of the retaliation claim[.]"  Finally, "the

9    damages awarded are excessive and not supported by the evidence."  (ECF No. 156 at 1.)

10                    1.  The Jury Instruction

11                         a.  Employer and Employee Relationship

12                    Defendant argues the jury instruction as to plaintiff's retaliation claim was

13    erroneous because "the [c]ourt did not give the . . . element requested by defendant County in the

14    final jury instruction about retaliation . . . —namely that plaintiff must be an employee or job

15    applicant in having some type of applicant/employer relationship with the County."  (ECF

16    No. 156-1 at 4.)  Plaintiff counters that former employees are covered under the FEHA.  (*See*

17    ECF No. 173 at 2–8.)

18                    The court finds the jury instruction it provided was not erroneous.   If the court had

19    provided the jury instruction requested by defendant, it would have likely erred.  As explained

20    above, the FEHA covers not only current employees or job applicants, but also former employees.

21    (*See* pages 6–9 *supra.*)  Moreover, defendant's argument that the court must have instructed the

22    jury that plaintiff should have at least applied for the Chief Investigator position is unpersuasive

23    in light of the unique circumstances of this case.  Plaintiff introduced sufficient evidence from

24    which a reasonable jury could have believed plaintiff's theory of the case: plaintiff was

25    intentionally placed in the status of a laid off employee, which meant she was not able to be

26    promoted to Chief Investigator because there was no official application process for that position.

27    (*See* ECF No. 173 at 7.)  It is the jury's province whether or not to believe plaintiff's theory as

28    long as that theory is supported by evidence, as it was here.  *See Kode*, 596 F.3d at 613 ("[I]f the

1    jury's verdict is not clearly against the weight of the evidence, the trial court abuses its discretion

2    in ordering a new trial." (internal quotation marks omitted)).

3                              b.  Adverse Employment Action

4                    Defendant also repeats the argument it made in support of its renewed motion for

5    JMOL: Because plaintiff was a retiree and did not apply for the Chief Investigator position,

6    defendant's decision not to appoint plaintiff as Chief did not alter her "retiree status . . . in any

7    way." (ECF No. 156-1 at 10.)  The court has considered and rejected that argument.  (*See* pages

8    9–10 *supra*.)

9                    In addition, defendant argues the jury should have been instructed on the definition

10   of "adverse employment action."  (*Id.* at 10–11.)  Plaintiff counters there was no need to provide

11   the "adverse employment action" jury instruction because defendant stipulated that the two

12   challenged acts, the layoff and failure to promote, qualified as adverse employment actions.

13   (ECF No. 173 at 16–17.)

14                   Federal Rule of Civil Procedure 51(c) provides: "A party who objects to an

15   instruction or the failure to give an instruction must do so on the record, stating distinctly the

16   matter objected to and the grounds for the objections."  An objection is timely if a party objects at

17   the opportunity provided by the court.  Fed. R. Civ. P. 51(c).

18                   At the time of the discussion with the parties about the final jury instructions, the

19   court explicitly asked the parties whether the layoff and the decision not to promote plaintiff to

20   the Chief Investigator position were established as facts and whether those actions were the only

21   adverse employment actions alleged in this case.  (*See* Trial Transcript 1530:25–1531:16.)  Both

22   parties agreed it was established that plaintiff was laid off and was not promoted to the Chief

23   Investigator position and that plaintiff challenged only those actions as being adverse

24   employment actions.  (*Id.* at 1531:3–16.)  Based on the parties' stipulation, the court instructed

25   the jury that those elements were satisfied.  (ECF No. 124 at 24–25.)  Moreover, at the hearing on

26   the instant motion, defendant conceded it had not objected to the court's proposal at the time of

27   the conference with the parties (Trial Transcript at 1531:15–16).  The court finds defendant did

28   not object as requested to preserve its position as to the jury instruction regarding the adverse

14

1    instruction element.  *Cf. Medtronic, Inc. v. White*, 526 F.3d 487, 495 (9th Cir. 2008) (holding "a

2    limited exception" to Rule 51(c) exists "when (1) throughout the trial the party argued the

3    disputed matter with the court, (2) it is clear from the record that the court knew the party's

4    grounds for disagreement with the instruction, and (3) the party offered an alternative instruction"

5    (internal quotation marks omitted)).  Even if defendant had properly objected, it is undisputed the

6    jury instructions provided conformed with the law.  *See McCoy v. Pac. Mar. Ass'n*, 216 Cal. App.

7    4th 283, 299 (2013) (termination of an employment is a quintessential example of an adverse

8    employment action); *Wysinger v. Auto. Club of S. Cal.*, 157 Cal. App. 4th 413, 424 (2007) ("The

9    refusal to promote . . . is an adverse employment action under FEHA.").  Accordingly, the court

10   did not err in instructing the jury to accept as proven that defendant laid off plaintiff and that

11   defendant did not appoint plaintiff to Chief Investigator.

12                   2.  Retaliation: The Sufficiency of the Evidence

13                   Regarding the retaliation verdict, Defendant essentially repeats the same argument

14   it made in support of its renewed motion for JMOL: There was insufficient evidence for the jury

15   to hold that the layoff and the failure to promote were causally connected to plaintiff's complaints

16   of discrimination.  (ECF No. 156-1 at 11–12.)  Plaintiff counters she did introduce sufficient

17   direct and circumstantial evidence from which a reasonable jury could have found causation

18   existed.  (ECF No. 173 at 14–16.)

19                   As noted above, causation is an essential element of a retaliation claim.  *See*

20   *Morgan*, 88 Cal. App. 4th at 69–70.  The court finds the jury reasonably could have found that

21   Willett was aware of plaintiff's protected activities and that the termination and the decision not

22   to promote plaintiff were in response to those activities.  A reasonable jury, hearing the testimony

23   of Ferrari and Willett, could have concluded that Ferrari had ample opportunity to inform Willett

24   of plaintiff's complaints and had, indeed, done so.  (*See* Ferrari Test. 1392:16–1395:21,

25   1423:3-1426:23.)

26                   The court's conclusion that a jury could reasonably have found for plaintiff is

27   further supported by the fact that plaintiff effectively called into question the credibility of the

28   County's witnesses, Willet and Ferrari, on several occasions during trial.  *See Roy*, 896 F.2d at

1    1176 (in deciding a motion for new trial, the court may weigh the credibility of witnesses).

2    Willett was evasive and was caught in contradictions several times.  (*See, e.g.*, Willett Test.

3    933:1–934:10, 934:24–939:12, 978:16–979:21, 1092:11–1064:6.)  Similarly, Ferrari was

4    impeached in response to the question whether plaintiff had conveyed

5    information to him about her concerns of discriminatory treatment toward Aguirre.  (*See* Ferrari

6    Test. 1423:10–1427:12.)

7            The court notes that for the first time in its reply brief, defendant somewhat

8    confusingly states the video clip from Willett's deposition, shown by plaintiff during her closing

9    argument, "cannot . . . form the basis for plaintiff's argument that sufficient evidence was

10   presented[]" on Willett's knowledge because defendant "was never informed that plaintiff

11   intended to play [that] video . . . and was not given a chance . . . to object . . . ."  (ECF No. 176 at

12   7.)  To the extent defendant challenges the court's decision not to exclude the video clip *sua*

13   *sponte*, the court finds defendant's statement raised for the first time on reply is unavailing.  *See*

14   *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply

15   brief are waived.").  Defendant admits "[t]he jury was properly instructed that [c]losing

16   [a]rguments were not evidence."  (ECF No. 176 at 7.)  If defendant believed showing the video

17   clip was inappropriate, nothing prevented it from objecting at the time the video was shown.

18   Defendant has not presented the court with authority requiring a district court to *sua sponte*

19   preclude the showing of the video clip.  *See United States v. Fierro*, 450 F. App'x 586, 587 (9th

20   Cir. 2011) (unpublished) ("District judges are not obligated to exclude evidence [as prejudicial]

21   *sua sponte*." (emphasis in original)).  Nevertheless, the court does not rely on the video clip in

22   deciding the instant motions.

23                3.  Failure to Prevent Retaliation

24            Defendant also argues that because since there was insufficient evidence to support

25   plaintiff's retaliation claim, plaintiff's failure to prevent retaliation claim also must fail.  (ECF

26   No. 156-1 at 12–13.)  Because the court finds the jury's verdict as to plaintiff's retaliation claim is

27   supported by the evidence, defendant's sole argument on that claim is correspondingly

28   unavailing.  *See Trujillo*, 63 Cal. App. 4th at 289 ("Employers should not be held liable to

1    employees for failure to take necessary steps to prevent [unlawful] conduct, except where the

2    actions took place and were not prevented.").

3                  4.   Damages

4            Defendant argues the jury's award for past lost wages and pain and suffering is

5    excessive and not supported by evidence.  (ECF No. 156-1 at 13–15.)

6                a.   Past Lost Wages

7            Defendant argues "the jury's award is excessive because it awards past lost

8    earnings for a period of time in which plaintiff was not employed due to a legitimate reduction in

9    force."  (ECF No. 156-1 at 13.)  Specifically, defendant reasons that plaintiff "is not entitled to

10   compensation for the period from July 2011 through December 2011 since there was no evidence

11   on which the jury could find that the layoff was retaliatory."  (*Id.*)  Plaintiff responds that the

12   amount awarded by the jury was correct because plaintiff's economic damages started from the

13   time plaintiff was laid off.  (ECF No. 173 at 18.)

14            Courts "allow substantial deference to a jury's finding of the appropriate amount

15   of damages."  *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th

16   Cir. 1996).  The jury's finding must be upheld "unless the amount is grossly excessive or

17   monstrous, clearly not supported by the evidence, or based only on speculation or guesswork."

18   *Id.*

19            Here, none of those grounds is present.  The jury awarded plaintiff $73,625 for

20   past lost earnings.  (ECF No. 145 at 10.)  That award was supported by the testimony of

21   plaintiff's expert Dr. Charles Mahla.  (Mahla Test. at 1241:20–1242:23.)  The jury presumably

22   found Dr. Mahla's testimony to be credible, as was its call.  *See Del Monte Dunes at Monterey,*

23   *Ltd.*, 95 F.3d at 1435.  The court has already rejected defendant's argument about plaintiff's

24   layoff above.  Because defendant has not shown that the jury's award is grossly excessive, clearly

25   not supported by the evidence, or speculative, the court DENIES defendant's motion for a new

26   trial on past lost earnings.

27   /////

28   /////

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

b.  Pain and Suffering

Defendant also argues the award of $1,546,326 for emotional distress is excessively high because plaintiff "did not present evidence of emotional distress beyond disappointment that her career ended before she anticipated it would end."  (ECF No. 156-1 at 14–15.)  Plaintiff responds the amount awarded by the jury was not excessive in light of plaintiff's testimony about her emotional state and her 40 years of increasingly responsible work in the law enforcement arena.  (ECF No. 173 at 18–20.)

The same standard of review articulated under the past lost wages discussion applies in determining whether an award for pain and suffering is proper.  *See Goddard v. DHL Exp. (USA), Inc.*, 357 F. App'x 80, 81 (9th Cir. 2009) (unpublished).  In other words, "the damages award must be affirmed unless it is 'shocking to the conscience.'"  *Id.* (internal quotation marks omitted).

The court finds the jury's award proper.  Plaintiff testified she began her career in law enforcement at the age of fourteen.  (Trulsson Test. 1147:2–3.)  After working in various police departments, she became an investigator for the San Joaquin County DA's Office.  (*See id.* 1148–1157.)  Plaintiff further testified, without objection, that she was well-respected and was recognized as a leader by her subordinates.  (*See id.* 1165–1169.)  Others confirmed her self-impression.  (Ferrari Test. 1414:6–1415:12; Harris Test. 707:22–25; Preeo Test. 724:10–725:21; Kronlund Test. 609:7–22; Murray Test. 1309:10–14; Willett Test. 1003:13–17. )  Eventually, plaintiff became an assistant chief investigator and served in that capacity from 2006 to 2011.  (Trulsson Test. 1175:25–1176:1.)  Plaintiff testified that in March 2011, when she returned from duties associated with the FBI board on which she served with defendant's knowledge and approval (Willett Test. 925:9–24, 1080:4–1081:21), Ferrari called her into his office and without prior notice told plaintiff that her position was being eliminated.  (Trulsson Test. 1185:17–1186:15.)  She said the news stunned her.  (*Id.* 1186:16–19.)  The next day, plaintiff went to Willett and asked him if he could get additional funding to keep her on; Willett responded that he would try.  (*Id.* 1187:16–1188:17.)  Three weeks later, plaintiff again went to Willett to inquire
/////

18

1  about the status of the additional funding, but Willett "was very cold, and . . . that[ is] what hurt

2  [her] the most." (*Id.* 1189:12–1190:1.)  Plaintiff further testified about that encounter as follows:

> 3
> 4      I couldn't wrap my head around why he was treating me the way he
>        was treating me.  I never had anything like this happen to me in my
>        life, especially my boss who I had been so loyal to.  He was so cold
>        and callous.  He said, "I've got bigger issues I want to work . . .
> 5      on" . . . .  And he said, "That would just be a lovely parting gift."  I
>        just couldn't believe what I heard.  It took my breath away.  I just
> 6      looked at him and I said, "A lovely parting gift?"  It made me feel
>        like my whole career was a game show to him.
> 7

8  (*Id.* 1189:13–23.)  Plaintiff testified that she went back into her office and cried.  She felt that she

9  "was being just kind of like wound up and thrown in the garbage can . . . ." (*Id.* 1190:4–9.)

10  Although it was difficult for plaintiff, she continued to work until her last day with her "head held

11  high for [her] staff and for everybody else [she] worked with." (*Id.* 1190:20–1191:24.)

12          While Willett did apologize to plaintiff during his testimony, it was undisputed

13  that the first time he had done so was at his deposition after litigation had begun.  (Willett Test.

14  949:17–950:25.)

15          In addition, plaintiff testified that she "went a couple of times to counseling and

16  figured that [she] could probably continue to work through things [herself]." (Trulsson Test.

17  1196:7–10.)  She said she was still having problems with her sleep; she was humiliated and

18  embarrassed; and all of her friends were surprised that she was laid off. (*Id.* 1196:11–1197:7.)

19  Plaintiff also testified that after her layoff she continued participating in professional and

20  nonprofit organizations; and that she spent time painting, walking, working out, and bike riding.

21  (*Id.* 1217:1–1218:5.)  On redirect, she clarified that she did not serve on any boards other than her

22  church because

> 23
> 24     I kind of wanted to get back involved, but I've been a little
>        embarrassed about what happened to me.  I'm not sure how people
>        perceive me.  I think that it looks like I might have done something
> 25     seriously wrong the way I was let go or the way my career ended,
>        and I'm just not in a good place yet to do that.
> 26
>        . . . .

27  /////

28  /////

19

1                I think [sic] just emotionally not ready for that.  Everything is still
in the front of my mind. I think about it all the time.  And I just
2                don't know how well I could focus. . . .  [B]ut it's something I have
to live with for the rest of my life.

3

4   (*Id.* 1231:11–1232:2.)

5             Finally, in response to the question what her career meant to her, she reiterated as

6   follows:

7                Well, it's not the only thing that defines you in life, but it meant the
world to me. I worked on it for 40 years. And right now, it just
8                seems like it's in a box in my garage.

9   (*Id.* 1232:3–7.)

10             In light of plaintiff's testimony, the jury could have found as was its province that

11   plaintiff suffered substantial emotional damages based on defendant's retaliatory acts against her.

12   Because there was evidence, which, if believed, would support the jury's award, the court cannot

13   conclude the jury's award of pain and suffering damages to be grossly excessive, clearly not

14   supported by the evidence, or speculative.

15             Accordingly, the court DENIES defendant's motion for a new trial on the pain and

16   suffering damages.

17   IV.     <u>CONCLUSION</u>

18             For the foregoing reasons, the court DENIES defendant's motions.

19             IT IS SO ORDERED.

20   DATED:  September 23, 2014.

21

22                                               _____

23                               UNITED STATES DISTRICT JUDGE

24

25

26

27

28