1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JANIS TRULSSON,                          No.  2:11-CV-02986 KJM DAD

12                  Plaintiff,

13          v.                                 ORDER

14   COUNTY OF SAN JOAQUIN DISTRICT
     ATTORNEY'S OFFICE,
15
                    Defendant.
16

17          This matter is before the court on plaintiff's motion for attorney's fees.  (ECF

18   No. 148.)  Defendant opposes the motion.  (ECF No. 166.)  The court held a hearing on the matter

19   on September 26, 2014, at which Jill Telfer appeared for plaintiff and Velma Lim appeared for

20   defendant.  As explained below, the court GRANTS plaintiff's motion.

21   I.     BRIEF BACKGROUND

22          Plaintiff filed this employment discrimination case on November 9, 2011.  (ECF

23   No. 1.)  Through various pre-trial motions and rulings, the action was eventually narrowed so that

24   the case proceeded to trial on the following claims only: (1) gender discrimination in violation of

25   Title VII of the Civil Rights Act of 1964; (2) gender discrimination in violation of California's

26   Fair Employment and Housing Act ("FEHA"); (3) retaliation in violation of the FEHA; and

27   (4) failure to prevent retaliation and discrimination in violation of the FEHA.  (ECF No. 82.)

28   /////

                                              1

1    The jury trial commenced on March 10, 2014.  (ECF No. 109.)  The jury was

2    instructed and began its deliberations on March 28, 2014.  (ECF No. 127.)  On March 31, 2014,

3    the jury returned its verdict in favor of plaintiff, finding (1) defendant had retaliated against

4    plaintiff for complaining about gender discrimination and (2) defendant had failed to take all

5    reasonable steps to prevent retaliation.  (ECF No. 145 at 6–8.)  The jury awarded plaintiff

6    damages in the amount of $2,059,708.  (*Id.* at 10.)  The jury found plaintiff did not prove by the

7    preponderance of the evidence that defendant discriminated against plaintiff based on plaintiff's

8    gender.  (*Id.* at 2–5.)  In conformance with the jury verdict, the court entered a judgment in

9    plaintiff's favor.  (ECF No. 147.)

10    Plaintiff now moves for attorney's fees (ECF No. 148).  Defendant opposes the

11    motion (ECF No. 166), and plaintiff has replied (ECF No. 178.)

12    II.    LEGAL STANDARD

13    If a case is governed by state substantive law, then the state law also governs the

14    determination of whether attorney's fees should be awarded.  *Muniz v. United Parcel Serv., Inc.*,

15    738 F.3d 214, 218 (9th Cir. 2013).  California follows the "American rule" as opposed to the

16    "English rule" regarding recovery of fees: Each party to a lawsuit is generally responsible for his

17    or her fees.  *Musaelian v. Adams*, 45 Cal. 4th 512, 516 (2009).  However, the "American rule" has

18    two exceptions in California: (1) parties may contractually agree on the mode of attorney

19    compensation and (2) attorney's fees may be provided for by statute.  *Id.*  The FEHA represents

20    one such statutory exception to the "American rule."  Specifically, section 12965(b) of the FEHA

21    provides the court may in its discretion award reasonable attorney's fees and costs to the

22    prevailing party.  Cal. Gov't Code § 12965.  "This statute has been interpreted to mean that in a

23    FEHA action a trial court should ordinarily award attorney fees to a prevailing plaintiff unless

24    special circumstances would render a fee award unjust."  *Chavez v. City of Los Angeles*, 47 Cal.

25    4th 970, 976 (2010).  Attorney's fee awards in FEHA actions "are intended to provide fair

26    compensation to the attorneys involved in the litigation at hand and encourage [] litigation of

27    claims that in the public interest merit litigation."  *Id.* at 984 (internal quotation marks omitted,

28    alteration in original).

2

1    California courts award attorney's fees under the FEHA by using "the lodestar

2  adjustment method . . . ." *Id.* at 985.  Applying this method, a court must first determine a

3  lodestar amount by multiplying a reasonable hourly fee by a reasonable number of hours

4  expended by the attorney. *Id.*  Then, a court has discretion to increase or decrease that resulting

5  amount by the application of a "multiplier" after considering numerous relevant factors.  *Id.*

6  Ultimately, "when using the lodestar method to calculate attorney fees under the FEHA, the . . .

7  goal is to determine a 'reasonable' attorney fee, and not to encourage unnecessary litigation of

8  claims that serve no public purpose either because they have no broad public impact or because

9  they are factually or legally weak." *Id.* (internal quotation marks omitted).

10    In addition, a court must consider "the extent of a plaintiff's success" as a "crucial

11  factor" in "determining a prevailing plaintiff's attorney fee . . . ." *Id.* at 989.  "Under both

12  California and federal law, a fee award must be adjusted to reflect limited success." *Muniz*,

13  738 F.3d at 224.  "California courts . . . in cases of limited success have adopted the approach set

14  forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983)." *Envtl. Prot. Info. Ctr. v. California Dep't of*

15  *Forestry & Fire Prot.*, 190 Cal. App. 4th 217, 238 (2010).  That approach "has two components:

16  first, the court must deduct from the lodestar hours spent exclusively on unrelated unsuccessful

17  claims; and second, the court must evaluate the remaining hours to determine if they were

18  reasonably necessary to achieve the result obtained." *Muniz*, 738 F.3d at 224 (citing *Hensley,* 46

19  U.S. at 434).  "*Hensley* cautions that, before hours may be deducted . . . for unsuccessful claims,

20  the claims must be suitable for entirely separate lawsuits," meaning the claims "must be distinct

21  in both fact and law." *Muniz*, 738 F.3d at 224.  "To deduct time, the court must find that the time

22  deducted did not aid in proving the successful claims." *Id.*

23  III.    DISCUSSION

24    Plaintiff seeks to recover attorney's fees in the amount of $447,791.25, enhanced

25  by a 1.5 multiplier, or, in the alternative, $298,527.50, the mere lodestar.  (ECF No. 148 at 1.)

26  Counsel argues she reasonably expended 664 hours in litigating the instant case and seeks to

27  recover for all those hours.  (ECF No. 148 at 6.)  She avers that even though plaintiff did not

28  prevail on all of her claims, because all four of her claims stemmed from the same common facts,

1    plaintiff's award should not be apportioned between the claims on which she prevailed and the

2    claims on which she did not.  (*Id.* at 7–8.)  Plaintiff claims the lodestar amount should be

3    enhanced by a 1.5 multiplier because counsel accepted the case on a contingency fee basis; was

4    precluded from undertaking other representation; demonstrated a high level of skill in prevailing

5    in the lawsuit; and obtained a large damages award.  (*Id.* at 9–14.)

6           Defendant's response is two-fold: First, defendant argues the award of attorney's

7    fees should reflect plaintiff's limited success (ECF No. 166 at 1–4), and second, the fees should

8    not be enhanced by a multiplier because the relevant factors weigh against enhancement (*id.* at

9    4-5).  Defendant concludes plaintiff should be awarded fees in an amount not greater "than

10   $99,519.17, representing one third of her requested lodestar."  (*Id.* at 5.)

11          A.    Lodestar

12                1.    Number of Hours

13          Defendant does not argue that specific time entries should be stricken.  Rather,

14   defendant argues the 664 hours plaintiff's counsel expended on litigating this case should be

15   reduced to reflect plaintiff's limited success in prevailing on the retaliation and failure to prevent

16   retaliation claims under the FEHA and losing on her gender discrimination claims under the

17   FEHA and Title VII.  (ECF No. 166 at 1–4.)  Defendant argues "plaintiff's retaliation claim was

18   only a minor focus of th[e] case."  (*Id.* at 3.)  "The facts required to establish these two allegations

19   of retaliation were limited to plaintiff's belief regarding Mary Aguirre, the fact that she filed a

20   Rule 20 Complaint, and facts establishing DA Willett's knowledge (actually, his lack of

21   knowledge) of those complaints and how the complaints impacted [Willett's] decisions."  (*Id.*)

22   Defendant concludes, "[a] two-thirds reduction to plaintiff's fees would adequately represent the

23   amount of time spent on the unsuccessful discrimination claim[] [because] [a]pproximately two-

24   thirds of the trial was spent on evidence relating to discrimination rather than retaliation."  (*Id.* at

25   4.)

26   /////

27   /////

28   /////

4

1    In adjusting a lodestar amount "to account for time spent exclusively on an

2  unsuccessful claim," *Muniz*, 738 F.3d at 223, the court first determines whether the successful

3  claims are related to the unsuccessful claims. *Envtl. Prot. Info. Ctr.*, 190 Cal. App. 4th at 239.

4  "There is no certain method for determining when claims are related or unrelated." *Id.* But if the

5  claims are based on different legal theories and facts, they may be deemed as unrelated. *Id.* In

6  contrast, related claims "will involve a common core of facts or will be based on related legal

7  theories." *Id.* (internal quotation marks omitted). A successful claim is unrelated to an

8  unsuccessful claim "when the relief sought on the unsuccessful claim is intended to remedy a

9  course of conduct entirely distinct and separate from the course of conduct that gave rise to the

10  injury on which the relief granted is premised." *Id.*

11    If the claims are related, a court proceeds to the second step and considers whether

12  a prevailing plaintiff's level of success "makes the hours reasonably expended a satisfactory basis

13  for making a fee award." *Id.* (internal quotation marks omitted). Under this analysis, a court

14  "will evaluate the significance of the overall relief obtained by the plaintiff in relation to the hours

15  reasonably expended on litigation." *Id.* "Full compensation may be appropriate where [a]

16  plaintiff has obtained excellent results, but may be excessive if a plaintiff has achieved only

17  partial or limited success." *Id.* (internal quotation marks omitted).

18                    a.   Relatedness of Claims

19    Here, the court finds plaintiff's claims were closely related. As to plaintiff's Title

20  VII and FEHA claims, the jury found plaintiff did not prove that defendant discriminated against

21  her based on her gender in laying her off and not promoting her to Chief Investigator. (ECF

22  No. 145 at 2–3.) Nevertheless, the jury found in favor of plaintiff on her retaliation and failure to

23  prevent retaliation FEHA claims, based on plaintiff's having made a complaint of gender

24  discrimination. (*Id.* at 6–8.) While plaintiff prevailed on two of her four claims only, she

25  obtained the relief she sought: The jury awarded plaintiff damages for past lost earnings and

26  benefits in the amount of $73,625, for future lost earnings and benefits in the amount of

27  $439,757, and for pain and suffering in the amount of $1,546,326. (*Id.* at 10.) Those damages

28  represent the exact relief plaintiff argued for during her closing argument:

1
2
3

> So what you need to look at in damages, and you'll see this in the instruction, is the economic loss to Ms. Trulsson and the noneconomic loss.  Now, you heard from Dr. Mahla what the financial loss was.  And so the $73,625 is the past wage loss, and then the future wage loss is the $439,757.

4   (Trial Transcript at 1579:16–21.)

5   . . .

6
7

> So the damages. The past wage and benefit loss is $73,625.  The future wage and benefit loss is $439,757.  And then the mental suffering and emotional distress is significant.

8   (*Id.* at 1580:17–20.)

9   Because "success counts and is to be judged . . . by the relief given or the right

10  established[,]" and because plaintiff "ultimately obtained" "all the relief sought[,]" plaintiff's

11  failure to prevail on her gender discrimination claims "was ultimately unnecessary to" plaintiff's

12  success.  *Envtl. Prot. Info. Ctr.*, 190 Cal. App. 4th at 240–41 (internal quotation marks omitted

13  and alteration in original).

14  Plaintiff's evidence concerning defendant's alleged discriminatory treatment of

15  other female employees also was relevant to showing that plaintiff complained about gender

16  discrimination in the office in good faith.  *See Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 474

17  (2005) ("An employee is protected against retaliation if the employee reasonably and in good

18  faith believed that what he or she was opposing constituted unlawful employer conduct . . . .").

19  At hearing, defendant's counsel conceded that certain underlying facts solicited during trial were

20  applicable to all of plaintiff's claims.  That evidence also supported her theory of the case that she

21  was laid off and not promoted because of her complaints about discriminatory treatment of other

22  female employees.  *See Muniz*, 738 F.3d at 224 ("To deduct time, the court must find that the

23  time deducted did not aid in proving the successful claims.").

24  Finally, defendant's argument that "[t]he burden of proving a good faith belief is

25  not the same as establishing that discrimination actually occurred . . ." (ECF No. 166 at 3) is

26  unpersuasive; it was reasonable for plaintiff to introduce the strongest evidence in an attempt to

27  prove all of the case.

28  /////

Because "plaintiff's claims for relief . . . involved a common core of facts or were based on related legal theories[,] [m]uch of counsel's time [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435.  The court exercises its discretion in declining to make an equitable judgment.

### b.   Reasonableness of Hours Relative to Success

The court proceeds to the second step and asks whether plaintiff's counsel reasonably expended 664 hours.  This step "asks whether the hours allowed were reasonably necessary to achieve the result reached."  *Muniz*, 738 F.3d at 225.  "If the plaintiff obtained excellent results, full compensation may be appropriate."  *Harman v. City & Cnty. of San Francisco*, 158 Cal. App. 4th 407, 417 (2007) (internal quotation marks omitted).  In this step, "[t]he trial court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.  The court may appropriately reduce the lodestar calculation if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. . . .[T]he most critical factor is the degree of success obtained."  *Id.* at 418 (internal quotation marks omitted).

As noted, the jury awarded plaintiff the amount of damages she sought to recover.  The jury also awarded over $1 million in pain and suffering damages.  Plaintiff's recovery is self-evidently an excellent one.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation  . . . . the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  *Hensley*, 461 U.S. at 435.  Having reviewed the billing records plaintiff submitted, the court cannot say there are "specific hours that should be eliminated . . . ."  *Harman*, 158 Cal. App. 4th at 418.

The number of hours to use in the lodestar calculation here is 664.

### 2.   Reasonable Hourly Rate

In calculating the lodestar amount, the California Supreme Court has "expressly approved the use of prevailing hourly rates as a basis for the lodestar."  *Ketchum*, 24 Cal. 4th at

1   1132.  The relevant community is the forum in which the court is located.  *Camacho v.*

2   *Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  The burden is on the movant to present

3   evidence in support of the hours worked and the hourly rates.  *Hensley*, 461 U.S. at 437.

4   Plaintiff's requested lodestar amount is based on plaintiff's counsel's working at

5   an hourly billing rate of $425 for work done in 2011 (10.9 hours) and $450 per hour for work

6   done since 2012 (638.1+15=653.1 hours).  (Telfer Decl. ¶ 42, ECF 148-1.)  The total lodestar

7   amount plaintiff seeks equals $298,527.50 for 664 hours of work.  (*Id.*)  She correctly identifies

8   the Sacramento area as the relevant forum community.  (ECF No. 148 at 8–9.)  Plaintiff's

9   evidence in support of the requested hourly rate of $450 consists of declarations from Chris

10  Whelan, Lawrence Bohm, and Mark Velez, all Sacramento area attorneys practicing in

11  employment litigation.  (*See generally* Whelan Decl., ECF No. 148-2; Bohm Decl., ECF No. 148-

12  3; Velez Decl., ECF No. 148-4.)  At hearing, defendant confirmed it did not challenge plaintiff's

13  requested hourly rate.

14  The court finds plaintiff's requested rates reasonable.  Plaintiff's counsel graduated

15  from law school in 1989 and has been a California Bar member since then.  (ECF No. 148-1

16  ¶ 23.)  She has represented plaintiffs in employment cases since 1992 and has also been actively

17  involved with various professional legal associations.  (*Id.* ¶¶ 24–30.)  Whelan graduated from

18  law school in 1977 and has practiced employment law since 1980.  (ECF No. 148-2 ¶ 3.)  He

19  provides examples of Sacramento area state court cases approving his hourly rate up to $650.  (*Id.*

20  ¶¶ 5–10.)  He believes "the hourly rate appropriate" for plaintiff's counsel is between $500 and

21  $550.  (*Id.* ¶ 15.)  Bohm, who graduated from law school in 2000 and primarily practices

22  employment law, supports plaintiff's counsel's hourly rates based on his knowledge of the hourly

23  rates charged by other employment lawyers in the Sacramento area.  (ECF No. 148-3, ¶¶ 3-6,

24  8-12.)  Finally, Velez is a 1992 law school graduate who began practicing employment law in

25  1998.  (ECF No. 148-4 ¶¶ 2, 4.)  He also, based on his knowledge of attorney fee rates prevalent

26  in the Sacramento area, supports Telfer's $450 hourly rate.  (*Id.* ¶ 11.)

27  Other courts' decisions are consistent with finding the hourly rates of plaintiff's

28  counsel reasonable in the prevailing community.  *See Pehle v. Dufour*, No. 06-1889, 2014 WL

1   546115, at *6 (E.D. Cal. Feb. 11, 2014) ($350 reasonable hourly rate for labor attorney practicing

2   since 1989); *Knox v. Chiang*, No. 05-02198, 2013 WL 2434606, at *7–9 (E.D. Cal. June 5, 2013)

3   ($450 reasonable hourly rate for attorneys with extensive trial and appellate experience in labor

4   and constitutional law); *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 460 (E.D. Cal.

5   2013) ($400 prevailing hourly rate for counsel in wage-and-hour class action). *See also*

6   *McCarthy v. Reynolds*, No. 09–2495, 2011 WL 4344147, at *2 (E.D. Cal. Sept. 14, 2011) ($285

7   reasonable hourly rate for counsel in employment action pursuant to Title VII and FEHA); *Cosby*

8   *v. Autozone, Inc.*, No. 08-505, 2010 WL 5232992, at *3 (E.D. Cal. Dec. 16, 2010) ($375

9   reasonable hourly rate for counsel who assisted trial counsel in FEHA litigation).

10          B.      Enhancement of Lodestar

11          Plaintiff argues her requested lodestar amount should be enhanced by a 1.5

12   multiplier because (a) her counsel obtained excellent results; (b) her counsel was precluded from

13   other employment; and (c) the lawsuit served the public interest.  (ECF No. 148 at 10.)

14   Defendant disagrees, saying:  the results obtained were not excellent because plaintiff prevailed

15   only on two of her four claims; plaintiff was able to work on other cases; and "plaintiff did not

16   succeed on her [gender discrimination] claim[,] which arguably had the most significant public

17   interest."  (ECF No. 166 at 4–5.)

18          "[T]he party seeking a fee enhancement bears the burden of proof."  *Ketchum*,

19   24 Cal. 4th at 1138.  "[T]he trial court is not *required* to include a fee enhancement to the basic

20   lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion

21   to do so in the appropriate case[.]"  *Id.* (emphasis in original).  "In each case, the trial court should

22   consider whether, and to what extent, the attorney and client have been able to mitigate the risk of

23   nonpayment, e.g., because the client has agreed to pay some portion of the lodestar amount

24   regardless of outcome. It should also consider the degree to which the relevant market

25   compensates for contingency risk, extraordinary skill, or other factors . . . ."  *Id.*  The court

26   "should not consider these factors to the extent they are already encompassed within the

27   lodestar."  *Id.*

28   /////

9

1      For example,

2      the factor of extraordinary skill, in particular, appears susceptible to
       improper double counting; for the most part, the difficulty of a legal
3      question and the quality of representation are already encompassed
       in the lodestar.  A more difficult legal question typically requires
4
5      more attorney hours, and a more skillful and experienced attorney
       will command a higher hourly rate.

6      *Id.* at 1138–39.  In fact, "the reasonable hourly rate [used to calculate the lodestar] is the product

7      of a multiplicity of factors . . . the level of skill necessary, time limitations, the amount to be

8      obtained in the litigation, the attorney's reputation, and the undesirability of the case."  *Id.* at

9      1139 (internal quotation marks omitted and alterations in original).

10             Some of the factors courts may utilize in deciding whether to enhance the lodestar

11     amount include, but are not limited to:  "(1) the results obtained by plaintiff's counsel; (2) the

12     skill and quality of representation; (3) the novelty and difficulty of the questions involved; (4) the

13     extent to which the litigation precluded other employment by the attorneys; and (5) the contingent

14     nature of the case."  *Jadwin v. Cnty. of Kern*, 767 F. Supp. 2d 1069, 1134–35 (E.D. Cal. 2011)

15     (citing California and Ninth Circuit cases).

16             The court declines to consider basing a multiplier on skill.  While the court

17     recognizes the high quality of representation of plaintiff's counsel, the court cannot say "the

18     quality of representation far exceed[ed] the quality of representation that would have been

19     provided by an attorney of comparable skill and experience billing at the hourly rate used in the

20     lodestar calculation."  *Ketchum*, 24 Cal. 4th at 1139.  The court also does not consider the

21     difficulty of the questions involved.  The lodestar amount itself accounts for this factor and,

22     therefore, an enhancement based on this factor is inappropriate.  *See Kranson v. Fed. Express

23     Corp.*, No. 11-05826, 2013 WL 6503308, at *12 (N.D. Cal. Dec. 11, 2013).  The court does

24     address the results obtained, preclusion of other employment and contingent risk, and finds the

25     circumstances of the case warrant an enhancement.

26             1.      Results Obtained

27             The court finds this factor weighs in favor of an enhancement.  While plaintiff did

28     not prevail on all four of her claims, she did obtain the precise relief she sought, as explained

                                                    10

above.  *See also Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1419, (1991), *disapproved of on other grounds by Olson v. Auto. Club of S. California*, 42 Cal. 4th 1142 (2008) ("The plaintiffs' lack of success on four causes of action but achievement of a monetary recovery which expert witnesses characterized as excellent supported the judge's decision to apply a multiplier of 1.5 instead of 2.0.").

In addition, the declarations submitted by attorneys Whelan, Velez and Bohm further support the excellent result obtained by plaintiff's counsel.  *See* ECF Nos. 148-2, 148-3, 148-4.  *See also Leuzinger v. Cnty. of Lake*, No. 06-00398, 2009 WL 839056, at *10 (N.D. Cal. Mar. 30, 2009) ("[Plaintiff] proffered declarations from two attorneys with extensive employment law litigation experience, one of whom also reviewed verdict databases, and each of which declares that the $1.67 million verdict in this matter was an exceptional result.").  This factor supports a multiplier.

2.       Preclusion of Other Employment

Plaintiff claims the instant case "has had a profound impact on the firm's finances, and the firm's ability to take, and work on other cases that could have provided a more certain and reliable stream of income."  (ECF No. 148 at 13.)  Defendant responds "plaintiff has failed to identify with any specificity any cases that she was unable to take or work on as a result of this case."  (ECF No. 166 at 4.)

The court finds this factor is neutral.  While the court is mindful of the potential difficulties that a solo practitioner may face in undertaking a complex employment case, the hours plaintiff's counsel spent on this case will be compensated under the lodestar calculation.  Plaintiff has not met her burden in providing any specific cases that were rejected or prospective clients that were turned away.  *See Jadwin*, 767 F. Supp. 2d at 1137 (holding the same under similar circumstances); *see also Hamed v. Macy's W. Stores, Inc.*, No. 10-2790, 2011 WL 5183856, at *11 (N.D. Cal. Oct. 31, 2011) ("Ordinary preclusion from performing other work while engrossed in a pending action is a part of every case, and a party's counsel are not entitled to a multiplier merely because they were busy during trial.").

/////

1          3.       Contingent Risk

2                   Plaintiff argues her counsel accepted the instant case on a contingency fee basis,

3    without receiving any reimbursement for her out-of-pocket expenses, which was particularly

4    risky for a solo practitioner.  (ECF No. 148 at 11.)  Defendant responds because the purpose of a

5    contingency fee agreement is to attract lawyers to accept cases that would be in the interest of the

6    public, this factor weighs against an enhancement as "plaintiff did not succeed on her claim

7    which arguably had the most significant public interest."  (ECF No. 166 at 4.)

8                   The California Supreme Court has observed:

9                        The economic rationale for fee enhancement in contingency cases
                         has been explained as follows: A contingent fee must be higher than
10                       a fee for the same legal services paid as they are performed. The
                         contingent fee compensates the lawyer not only for the legal
11                       services he renders but for the loan of those services. The implicit
                         interest rate on such a loan is higher because the risk of default (the
12                       loss of the case, which cancels the debt of the client to the lawyer)
                         is much higher than that of conventional loans.
13
                         A lawyer who both bears the risk of not being paid and provides
14                       legal services is not receiving the fair market value of his work if he
                         is paid only for the second of these functions. If he is paid no more,
15                       competent counsel will be reluctant to accept fee award cases.

16   *Ketchum*, 24 Cal. 4th at 1132–33 (citations and internal quotation marks omitted).

17                  Plaintiff's counsel attests that she "cannot afford to represent an individual

18   employee on a contingency basis if at the end of the representation, all [she is] to receive is [her]

19   hourly rate for [her] services."  (Telfer Decl. ¶ 33, ECF No. 148-1.)  She further states she

20   "received no fees whatsoever" during her representation leading to trial.  (*Id.* ¶ 34.)  Plaintiff

21   "paid a total of approximately $3,100 . . . beginning in mid-2011" when plaintiff's counsel was

22   retained; these funds went toward costs.  (*Id.*)  Plaintiff's counsel has been working on this case

23   since 2011, a significant amount of time for a solo practitioner to go unpaid.  Defendant's

24   argument that the case's outcome vindicated only plaintiff's own rights is unpersuasive; the

25   outcome serves the public interest by effectuating the FEHA's purposes and making employers,

26   including defendant County, more mindful of their compliance with the law on gender

27   discrimination.  The court finds this factor weighs in favor of awarding an enhancement.  *See*

28   *Leuzinger*, 2009 WL 839056, at *10 ("An enhancement is not a windfall, but earned

compensation in the form of a premium reflecting the risk of nonpayment or delay in payment of attorney fees.").

Balancing the factors above, the court finds a multiplier of 1.5 is appropriate in this case. Accordingly, the court awards plaintiff's counsel total fees as follows:

| TOTAL LODESTAR | $298,527.50 |
|---|---|
| **MULTIPLIER** | 1.5 |
| **TOTAL** | **$447,791.25** |

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS plaintiff's motion and AWARDS plaintiff $447,791.25 in attorneys' fees.  Plaintiff's bill of costs (ECF No. 149) will be addressed in a separate order.

IT IS SO ORDERED.

DATED:  October 27, 2014.

_____
UNITED STATES DISTRICT JUDGE